## UNITED STATES v. GRADY.

### No. 10145.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1950.

Decided Nov. 15, 1950.

Maurice J. Walsh, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., Joseph E. Tobin, Asst. U. S. Atty., Frank A. Gallagher, and Gilbert A. Horn, U. S. Dept. of Agriculture, all of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

Defendant was charged in an information containing nine counts, signed by the United States Attorney, with a violation of various sections of the Commodity Exchange Act, Title 7 U.S.C.A. §§ 6b(A) and (B) and 6d(2). Count 9 was dismissed by the government and ordered detached by the court. The case has twice been tried. On the first trial, a jury disagreed, and on a second trial (the instant case), a jury returned a verdict of guilty on all eight counts. Motions for a new trial and in arrest of judgment were denied. Thereupon judgment was entered on the verdict, from which the appeal comes to this court.

In the view which we take of the case, we need consider only a single ground relied upon for reversal, which makes it unnecessary to relate in detail either the allegations contained in the various counts of the information or the proof offered in support thereof. In substance, defendant, charged with being a registered future commission merchant, was alleged to have received funds from customers for the purpose of margining trades in commodity futures for the account of such customers and unlawfully defrauding them in connection with such transactions; with failing to treat and deal with the funds so received as belonging to such customers in accordance with the requirements of the Commodity Exchange Act; and with mak-

ing false reports to such customers with respect to such transactions. The government presented the testimony of four customer witnesses who stated that they had placed specific sums of money totaling $25,225.00 with defendant, which money was to be used to margin transactions in commodity futures for their accounts. It was also shown by these witnesses that defendant informed them that transactions in commodity futures had been executed for them. The government also offered in evidence authenticated copies of Department of Agriculture records showing the Chicago Open Board of Trade as having been designated by the Secretary of Agriculture as a contract market under the Commodity Exchange Act. It was also shown by the Secretary of the Chicago Open Board of Trade that the defendant was a member of that organization.

This brief description of the nature of the charges, as well as the proof relied upon by the government, is pertinent only as a prelude to the matter which follows. There was attached to the information the following affidavit:

"Northern District of Illinois
Eastern Division } ss.

"George Livingston, being first duly sworn, on his oath deposes and says that the facts stated in the foregoing Criminal Information are true.

George Livingston

(Seal)

"Subscribed and Sworn to before me this 6th day of October, A.D. 1948.
Roland C. Kumb
Dep. Clerk of the District Court of the United States for the Northern District of Illinois, Eastern Division."

(George Livingston was not a witness at the trial.)

The jury was permitted to take with it to the jury room the information with the affidavit attached. The court gave to the jury the usual cautionary instruction, that the information was not to be considered as evidence against the defendant, that it was simply the formal charge made by the government and should not be considered by the jury in any other light. No mention of the affidavit was made by the court in its instructions or otherwise, and no objection was made by defendant to the submission of the affidavit. In fairness to court and counsel, however, it should be stated that there is nothing in the record to indicate that either was informed or had knowledge that the affidavit was being submitted. Defendant's counsel assert that the first knowledge they had of its submission was subsequent to the trial, and the question relative thereto was first raised by defendant on motion for new trial.

Thus, our problem is whether the submission of this affidavit constitutes reversible error. Defendant, as might be expected, relies heavily upon a previous decision of this court, United States v. Douglas, 7 Cir., 155 F.2d 894. The government makes no criticism of our holding in the Douglas case but attempts to distinguish it from the instant situation. We think, however, there is no distinction in the principle involved and such as there is relates only to the form and content of the affidavit. In addition to its contention that the instant case is distinguishable from the Douglas case, the government argues that the defendant is in no position to raise the question because of a failure to object at the appropriate time, points to the cautionary instruction which the court gave as to the effect to be given to the information and the purpose for which it could be used as curing the error, if such it be, and contends that in any event the error was not of such a prejudicial nature as to require a reversal. All of these contentions were advanced in the Douglas case and answered adversely to the government's contention.

It is true that there are very few cases, if any, other than the Douglas case which throw light upon the question before us. The government cites People v. Franklin, 341 Ill. 499, 173 N.E. 607, as the closest case which it has been able to find. In that case, each count of the information was supported by an affidavit of the States Attorney. The defendant for some strange reason was complaining in the Supreme Court because the trial court had directed detachment of the affidavits from the information before the latter was submitted

to the jury. The court held that the defendant was not injured thereby, and in doing so stated 341 Ill. at page 501, 173 N.E. at page 608: " * * * plaintiff in error could not be injured by detaching the affidavits, since the affidavit of the state's attorney might, in the absence of proper instruction, cause the jury to feel that the information was to be treated as evidence." That case is of no benefit to the government here, but if it has any bearing it is an indication that the defendant might have been injured for failure to detach the affidavit. The government also cites, without too much reliance, certain Indiana cases. Middaugh v. State, 191 Ind. 373, 132 N.E. 678; Berry v. State, 196 Ind. 258, 148 N.E. 143; Lee v. State, 213 Ind. 352, 12 N.E.2d 949. In those cases, the "affidavit" was the statutory pleading or, more specifically, the affidavit constituted the charge on which the defendant was brought to trial. In contrast, the affidavit in the instant situation is no part of the charge and neither is it essential to the validity of the information.

Whatever might have been the rule prior to the adoption of the Federal Rules of Criminal Procedure, 18 U.S.C.A., it seems plain by Rule 7(a) that an information need not be verified by affidavit, and it "may be filed without leave of court." And by Rule 9(a), it seems equally plain that an information need be supported by an oath only when there is a request by the government attorney for the issuance of a warrant, and in the absence of such oath only a summons will issue requiring the defendant to appear. Therefore, there is no basis for the argument that the affidavit in the instant case was either a part of the information or a requisite to its validity. Its sole purpose was to enable the government to obtain the issuance of a warrant.

We are not impressed with the government's argument that the affidavit is a mere formality, that Livingston was in no way identified to the jury and that his statement is harmless. A few assumptions may help dispel this argument. Suppose Livingston had been placed on the stand by the government and permitted to testify that the facts stated in the information were true. Or suppose the court had charged the jury that the facts alleged in the information were true. Or suppose Livingston or some other person had made an oral statement to the jury, either before or after it retired, that the facts alleged in the information were true. Or suppose Livingston's affidavit had not been attached to the information and had inadvertently been sent to the jury. Or suppose an attorney in argument to the jury had stated of his own knowledge that the facts stated in the information were true. In any of these contingencies, we think that error would be conceded and that no one would have the temerity to suggest that it was not harmful to the defendant. And is there any reason to think that the sending of this silent witness to the jury room was any less harmful?

True, it is possible that the defendant suffered no harm by reason of the affidavit going to the jury; in fact, it could be that the affidavit was not seen by a single member of the jury. On the other hand, it could and it might have been used effectively in persuading jurors otherwise doubtful or opposed to conviction to agree to a verdict favorable to the government. And it is sufficient to require a reversal if, in our judgment, the error might have operated to the substantial injury of the defendant. See United States v. Dressler, 7 Cir., 112 F.2d 972, 978 (and cases cited).

We, therefore, are of the view that the submission of the affidavit to the jury was erroneous, that it might have been harmful to the defendant and was, therefore, prejudicial. The judgment appealed from is reversed and remanded for a new trial.