**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George Edward BLUE, Defendant-
Appellant.**

**No. 18213.**

United States Court of Appeals,
Seventh Circuit.

March 26, 1971.

Barry T. McNamara, Chicago, Ill., for
defendant-appellant.

William C. Lee, U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, KNOCH, Senior Circuit Judge and STEVENS, Circuit Judge.

KNOCH, *Senior Circuit Judge.*

Defendant-appellant George Edward Blue, was tried by a jury on a one-count indictment for robbery in violation of Title 18 U.S.C. § 2113(d). Of his two co-defendants, Mary Ann Mowat (Davis) and Teddy Roosevelt Love, the first pleaded guilty and the second was tried with defendant and found not guilty. The defendant was found guilty and sentenced to serve twenty years' imprisonment. This appeal followed.

Defendant contends that the Trial Court erred (1) in denying his motion for severance under Rule 14, Federal Rules of Criminal Procedure; and (2) in allowing 22 silver dollars to be admitted in evidence without showing a complete chain of custody.

Defendant asserts that he anticipated, what did in fact happen, that his co-defendant might elect to testify. Then when the defendant elected, as he did, not to testify, he was deprived of his right to remain silent without comment by court, prosecution or co-defendant's counsel and without subjecting himself to adverse presumptions. Defendant contends that when his co-defendant, in testifying in his own behalf, made statements implicating defendant the latter was deprived of a fair trial. He feels this error was compounded by comments of co-defendant's counsel in closing argument to the jury, a circumstance requiring severance as held in DeLuna v. United States of America, 5 Cir., 1962, 308 F.2d 140, rehrg. den. 1963, 324 F.2d 375.

Defendant relies on United States of America v. Haupt, 7 Cir., 1943, 136 F.2d 661, where the Court held cautionary instructions to consider statements as evidence only against the defendants who made them were inadequate to avoid prejudice, and United States of America

v. Echeles, 7 Cir., 1965, 352 F.2d 892, in which this Court found it error to deny severance where a defendant was thereby prevented from calling his co-defendant as a witness to introduce exculpatory testimony. Defendant's attorney in oral argument also cited Garrity v. New Jersey, 1967, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562.

In Haupt, six defendants were prosecuted for treason on a one-count indictment charging 41 overt acts, in not all of which each defendant allegedly participated. Fourteen statements were introduced into evidence comprising in excess of 57 typed pages, consuming three hours' time in reading to the jury, mostly of a highly incriminating nature not only to the maker but to co-defendants. Judge Major, writing the opinion for this Court, doubted that it was within the realm of possibility for the jury to limit its consideration of the damaging effects merely to the defendant against whom the statements were admitted. Similarly "background" information as to some of the defendants was admitted to show treasonable intent or state of mind, which Judge Major thought must have had an effect on the other defendants tried with them.

The Court held in Haupt (136 F.2d pp. 673–674) that it could not be said the Trial Judge abused his discretion in overruling motion to sever based on the motions and the indictment, but after the trial, having heard all the evidence on "background" and the 14 incriminating statements, it became an abuse of discretion to deny the motion for a new trial. The Court also found that a study of the record showed the evidence not sufficient to sustain the judgments as to one, or perhaps more, of the defendants. Accordingly the three death sentences and the three sentences of 25 years and fine of $10,000 were reversed and the cause remanded for new trials.

*Garrity, supra,* concerned appellant police officers involved in an investigation of irregularities in handling cases. They had been cautioned that anything they said might be used against them in

criminal proceedings, that they could refuse to answer questions on the basis of their privilege against self-incrimination, but that refusal to answer would subject them to removal from office under N.J.Rev.Stat. § 2A:81–17.1 (Supp. 1965). Appellants were later convicted in trials during which their statements were admitted over objection. Justice Douglas, writing the opinion for the majority of the Court, held these statements were coerced statements inadmissible in subsequent criminal proceedings.

We find these cases distinguished on their facts.

Defendant argues that it would be unfair to the co-defendant, as well, not to be allowed to present all reasonable inference he could draw in his favor by implicating as many others as possible since in this case only two persons committed the actual robbery and according to the co-defendant's testimony at least seven persons were aware of the plans for the crime.

■ The ordering of a severance is within the sound discretion of the Trial Judge and we will not disturb his determination absent a showing of abuse of discretion.

■ The moving party must show prejudice, that he will be unable to obtain a fair trial without severance, not merely that a separate trial will offer a better chance of acquittal. Tillman v. United States of America, 5 Cir., 1969, 406 F.2d 930, 934–935, judgment vacated in part and remanded as to one defendant on other grounds; as to all other defendants, cert. den. 395 U.S. 830; Oden v. United States of America, 5 Cir., 1969, 410 F.2d 103, 104, cert. den. sub nom. Lacy v. United States of America, 396 U.S. 839, 90 S.Ct. 100, 24 L.Ed.2d 90.

■ As the government notes, this was a comparatively simple case of one count and only two defendants. In a multi-count indictment charging conspiracy, with three defendants, United States of America v. Kahn, 7 Cir., 1967, 381 F.2d 824, 838, cert. den. 389 U.S.

1015, 88 S.Ct. 591, 19 L.Ed.2d 661, this Court found no abuse of discretion in denying severance.

The co-defendant here testified that he was present at three or four discussions of a proposed bank robbery. He testified further that other persons, including defendant, participated in these discussions. After consideration, he said he decided to participate no further, did not take part in the robbery, was in another city on the date of the robbery and did not know which two persons committed the actual robbery. He submitted to cross-examination and did not otherwise implicate defendant, unlike DeLuna, supra, 308 F.2d p. 142, where the testifying co-defendant Adolfo Gomez said he was innocently riding in his own automobile with his cousin, Carlos Garza DeLuna, when the latter saw the police coming, tossed a package (which proved to contain narcotics) at Gomez and told him to throw it out of the window; the police saw only Gomez throwing the package out.

The allegedly prejudicial comments of counsel consisted, first, of a statement that the co-defendant did not have to take the stand but that he had decided to do so and to tell the jury everything. This statement occurred in the course of co-defendant's counsel's favorable comparison of his own client as contrasted with two of the government's witnesses with regard to credibility. He emphasized the past crimes of Nathaniel B. Moore and Lawrence L. Dreyer, and drew inferences from the testimony that Lawrence L. Dreyer was actually a participant in the robbery.

The prosecutor referred in his argument to "they" and co-defendant's counsel made the second of the remarks to which defendant takes exception, that defense counsel did not think this was a "they" case at all.

We do not believe these remarks are comparable to those in DeLuna v. United States of America, *supra*, ftn 1, 308 F. 2d pp. 142–143, where counsel repeatedly contrasted his client who testified with

the silent defendant DeLuna, remarking that Gomez had been a hardworking man for 15 or 20 years but that he didn't know what DeLuna did for a living, that DeLuna could have gotten up and told the jury; that Gomez explained how the narcotics reached his possession and nobody denied that DeLuna tossed them to Gomez. The Court twice overruled objection to these comments. Counsel went on to say that Gomez was honest enough and courageous enough to take the stand but that the jury had not heard a word from DeLuna. On further objection, the Court instructed the jurors that they were not to consider or refer to the fact that DeLuna did not testify.

As Judge Wisdom said in his opinion for the Fifth Circuit, these were not casual or isolated references but integral to Gomez's defense. To exculpate himself, Gomez had to convict DeLuna.

In the case before us, the co-defendant's testimony would have been equally consistent with defendant's also having abandoned the robbery project in the early planning stage.

Among the proceeds of the robbery were 22 silver dollars. About two weeks after the robbery, Mrs. Mowat sold 22 silver dollars to a coin dealer, Harold J. Ball, who sold them to another coin dealer who turned them over to Special Agent Jerome S. Murphy of the FBI. The coins were sent to the FBI Office in Washington, D. C. Agent Murphy received 22 silver dollars by return mail which he gave to the U. S. Marshal for safe keeping. These were admitted in evidence. Defendant contends that evidence is missing from anyone in the Washington Office to fill out the chain of custody, citing United States of America v. Panczko, 7 Cir., 1965, 353 F. 2d 676 where a link in the chain of custody, as here, was missing to show that the evidence was in the same condition.

■ ■ Panczko is not applicable in a case such as this one. The chain of custody is not relevant when a witness identifies the object as the actual object about which he has testified. In Panczko keys were involved. The witness was able to testify only that the keys shown him in court were "similar" to the keys originally handed to him during an earlier investigation. Here the witness, an expert on coins, stated positively that these were the same 22 silver dollars he had purchased in December 1968 from Mary Ann Mowat, in whose apartment testimony had shown the defendant had been staying during the period in which the robbery was planned and carried out. Mr. Ball had examined the coins under magnification at the time of purchase and he did so again on the witness stand. They were identifiable because of characteristics caused by heat exposure.

Unlike cases involving injuries attributed to defective articles, the fact whether or not the coins were in the identical condition was not vital. The testimony concerned only their identity as the same coins. The point of the evidence as a whole was that two weeks after the robbery, Mr. Ball bought from defendant's friend 22 heat scarred silver dollars similar to those taken from the Bank. Burris v. American Chicle Co., 2 Cir., 1941, 120 F.2d 218, 222.

■ Defendant-appellant himself, as distinguished from his counsel, in a supplementary brief, contends that the prosecutor introduced an anti-racial note into his final argument when he asked rhetorically "you wouldn't want your daughter to be like Maureen Carswell or Marlene Ebar [sic]?" both of whom were government witnesses and both of whom are White. Defendant is Black.

As indicated, there had been a vigorous attack on the characters of some of the government witnesses. The prosecutor began his closing argument saying he wished he had been able to present witnesses whose credibility would be beyond challenge, but that such were not the kinds of people one dealt with in a bank robbery investigation, somebody planning a bank robbery did not go to such persons for help. He said he was not asking the jury to believe that the

government's witnesses were "nice people", but to decide whether they were telling the truth. He then said he was "not asking you to feel sorry for this guy [Dreyer] because he is sick or to think that Maureen Carswell or Marlene Foelber [sic] are the kind of girls you would like your daughters to be. * * *"

Mrs. Eber's testimony indicated that she stayed for three weeks with Mary Ann Mowat (Davis), also White, who was the defendant's friend, and in whose apartment he was also living. Defendant describes Miss Carswell as the "estranged girl friend" of Lawrence Dreyer, also White. There was no testimony about any relationship between the two named women and the defendant.

We think defendant's interpretation of these remarks as having any racial connotation is unrealistic. We find no such impropriety of implication.

We have carefully considered all other points and authorities advanced on behalf of the defendant. We are satisfied that the judgment of the District Court must be affirmed.

Affirmed.