**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James V. PACENTE, Defendant-**
**Appellant.**

**No. 72–1988.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1973.

Decided Dec. 28, 1973.

Julius Lucius Echeles, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck and Sam J. Skinner, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge, and POOS, Senior District Judge.*

SWYGERT, Chief Judge.

James Pacente, a veteran Chicago police officer, was indicted on two counts: extorting money from Stojan Kovacevic, the owner of Chicago-Oak Liquors, a combination liquor store and tavern, in violation of the Hobbs Act, 18 U.S.C. § 1951; and making a false declaration before the grand jury in violation of 18 U.S.C. § 1623. Pacente was convicted after a jury trial and sentenced to concurrent terms of three years on each count. He has appealed and we reverse.

According to the evidence most favorable to the Government, Pacente solicited money from Kovacevic to prevent the latter from being arrested for having sold liquor to a minor. After making several offers of cash which were rejected by Pacente, Kovacevic wrote a check in the amount of $200 which was made out to cash and dated June 10, 1971. Subsequently, the check was cashed without endorsement at a tavern located near Pacente's home. The tavern owner testified that Pacente did not cash the check although he was unable to remember who did. That testimony was contradicted by an FBI agent who

---

* Senior District Judge Omer Poos of the Southern District of Illinois is sitting by designation.

stated that the owner had told him that a good friend of Pacente's had cashed the check. There was no dispute that other Chicago-Oak Liquors' checks had been cashed at this tavern.

Pacente was called before the Special February 1971 Grand Jury which was investigating possible violations of the Hobbs Act. He testified under oath that he did not receive the check for $200 which was dated June 10, 1971 and signed by Kovacevic. Subsequently, the grand jury returned an indictment in two counts charging extortion and the making of a false declaration. Prior to trial, defense counsel moved to have the Government proceed on only one count of the indictment, or, in the alternative, to sever the counts and provide separate trials for each. The motion was denied without reasons and the case set for trial. The denial of severance was again unsuccessfully raised after the conviction in a motion for a new trial and this appeal followed.

Although defendant raises several issues on appeal, we only focus on the question of whether severance should have been granted.

## I

Pacente argues that the extortion and false declaration counts should have been severed as misjoined under Rule 8(b) of the Federal Rules of Criminal Procedure.[1] As the Government correctly points out, Rule 8(a), not Rule 8(b), deals with the joinder of counts in this case. Rule 8(b) pertains to the joinder of defendants and Rule 8(a) to the joinder of offenses. Rule 8(a) provides:

> Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same

or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

The two offenses here are "based on the same act or transaction": Pacente's taking of the $200 from Kovacevic. The two offenses are also "connected together" since the false declaration count is based on a denial of having taken the money, a major element of the extortion. Moreover, the same evidence required to prove the extortion was used to prove the false declaration. *See* McElroy v. United States, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355 (1896). In United States v. Sweig, 441 F.2d 114, 118–119 (2d Cir. 1971), the Second Circuit held, in an appeal similar to the case before us, that a conspiracy count could properly be joined with perjury counts under Rule 8(a) where the same evidence could be used to prove both conspiracy and perjury.

■ We are not persuaded by Pacente's contention. The counts here were properly joined under Rule 8(a).

## II

Pacente next argues that even if joinder was permissible under Rule 8(a), a severance should have been granted pursuant to Rule 14 which provides in relevant part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . .

More specifically, defendant argues that he was prejudiced by the joinder of the

---

1. Rule 8(b) provides:
   Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

two counts since the petit jurors were aware that the grand jury found that he had lied when he denied having taken the June 10, 1971 check from Kovacevic.

The Government responds that this case is no different from any other one, "since the existence of the indictment is an obvious indication that the Grand Jury felt that the defendant was guilty" and therefore there was no prejudice to Pacente in trying both counts together. While this observation may have applicability to a multicount indictment on various substantive charges, we find it to be an over-simplification and inapplicable to the situation before us. It is one thing for the petit jurors to believe that the grand jury concluded that probable cause existed that the defendant committed the substantive offense. It is quite another thing, however, for the petit jurors to know that the grand jurors—laymen like themselves—believed the defendant to have lied to them. Such knowledge serves to impair a defendant's ability to effectively defend himself on the substantive charge. In the event the defendant testifies concerning the substantive charge, the knowledge of the false declaration count has the effect of informing the petit jurors that the defendant's testimony is not to be believed. Accordingly, the defendant is impeached as soon as he reaches the witness stand. On the other hand, in the event that defendant chooses not to take the stand the substantive offense is substantially reinforced by the addition of the false declaration count.

Additionally, the joinder of the substantive count with the false declaration count tends to shift the burden of proof to the defendant who must prove that he did not lie to the grand jury. The problem, however, is that there is no way to confront and defend against the false declaration count. This dilemma has been recognized by this circuit in the analogous cases of United States v. Douglas, 155 F.2d 894 (7th Cir. 1946), and United States v. Grady, 185 F.2d 272 (7th Cir. 1950). In those cases the defendants were tried on informations which had attached thereto affidavits containing evidence against the defendants in the one case, and a statement that the charge made and the information was true in the other case. Judge Major, writing for the court in both cases, held that submission of the affidavits to the jury was prejudicial to the defendants because the defendants had no effective means of confronting the allegations contained therein. The defendants there had no opportunity to meet the *ex parte* hearsay allegations in the affidavits to the effect that the charges contained in the information were true. The conclusion of the affiant that the substantive charges were true was thought to interfere with the petit jurors' ability to assess independently the evidence pertaining to the substantive charges when the affiant was not before them.

The prejudice which inured to the defendant here is further demonstrated by reference to a situation where the Government attempts to introduce at the trial of a defendant charged with a substantive offense only, evidence that defendant had also been indicted for perjury in connection with the same substantive charge. The evidence of the mere fact of indictment, however, would clearly be inadmissible because of the resulting prejudice to the defendant. IIIA Wigmore on Evidence, § 980a (Chadbourn Rev.1970).

This case is further complicated by the fact that the defendant, as a Chicago police officer, was subject to a rule of the Chicago Police Department under which he could be suspended or discharged for failing to testify before the grand jury. Accordingly, Pacente was faced with the prospect of either forfeiting his job or risking self-incrimination. This dilemma was recently recognized by this court in Confederation of Police v. Conlisk, 489 F.2d 891 (7th Cir., 1973). In that case the constitutional validity of the rule was struck down as depriving Chicago police officers the privilege against self-incrimination when a criminal proceeding might follow.

In support of its proposition that there is no prejudice in trying a substantive count with a false declaration count, the Government relies heavily on United States v. Sweig, 441 F.2d 114 (2d Cir. 1971). Sweig was jointly indicted with a codefendant who plead guilty before trial. Sweig argued on appeal that the joinder of the conspiracy charge with the multiple perjury charges was in violation of Rule 14. The Sweig case, however, is distinguishable from the one before us in three different respects. First, Sweig's motion for severance under Rule 14 was based on the same proposition that he raised, arguing misjoinder under Rule 8(a): conspiracy and perjury are distinct offenses that should not be tried together. This argument was not directed to prejudice, but only to misjoinder of counts. In motions under Rule 8 the court must determine whether defendants or offenses may be joined. When joinder is improper, severance is the appropriate remedy and there is no discretion in the court's ruling. If, however, joinder is proper and severance is requested under Rule 14, then the court must determine whether there is prejudice to either the defendant or the Government by the joinder. In that event, severance is required. This, however, is a discretional matter with the trial court which can be reversed only for abuse of discretion.[2]

Second, the trial judge in Sweig, in denying the pretrial motion for severance, expressed his willingness to reconsider the question of severance at a later time, but the issue was never raised again and the court of appeals treated the claim as being waived.

Third, it appears that in Sweig the court never considered the question before us: whether knowledge of the petit jurors that the grand jurors found that the defendant had lied prejudiced him and required reversal. That court was concerned with "possible prejudice resulting from the admission of the tangential 'hearsay' declarations against the relevance of Sweig's participation in conspiracy to his motive to lie before the grand jury." Id. at p. 119.

We are not persuaded by the Government's position that the court's limiting instruction cured the prejudice that might have resulted by trying the two counts together. The instruction which the Government makes reference to reads as follows:

You are instructed to consider the testimony given by the defendant Pacente before the Grand Jury on February 22nd only as evidence under Count 2 of the indictment and you should not consider it as evidence on any other count in the indictment.

The court also instructed the jury not to consider the indictment itself as evidence of guilt, nor to be prejudiced against the defendant merely because an indictment had been returned against him.

A vital question is whether a limiting instruction such as the one here in the context of this case can erase the slate once it is written upon. The court must depend on the jury not to rely on the false declaration indictment and the defendant's grand jury testimony, both of which would have been inadmissible as evidence if there had been separate trials on each count as we have noted above. Justice Frankfurter set forth a strong argument against the use of limiting instructions in his dissent in Delli Paoli v. United States, 352 U.S. 232, 247, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). The majority in that case upheld the admission of a codefendant's confession to be used solely against the codefendant. The Court held that Delli Paoli was protected by the court's limiting instruction to the jury that the confession be considered only as to the codefendant. We think that Justice Frankfurter's dissent

2. There is agreement between defendant and the Government as to the application of the abuse of discretion standard here. United States v. Kahn, 381 F.2d 824, 841 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967); United States v. Quinn, 365 F.2d 256, 267 (7th Cir. 1966).

is also applicable to the limiting instruction here.

One of the most recurring of the difficulties [in observing the rules of evidence admissible against some but not all defendants] pertains to incriminating declarations by one or more of the defendants that are not admissible against others. The dilemma is usually resolved by admitting such evidence against the declarant but cautioning the jury against its use in determining the guilt of the others. The fact of the matter is that too often such admonition against misuse is intrinsically ineffective in that the effect of such a nonadmissible declaration cannot be wiped from the brains of the jurors. The admonition therefore becomes a futile collocation of words and fails of its purpose as a legal protection to defendants against whom such a declaration should not tell. While enforcing declarant and admonishing the jury not to consider it against other defendants, Judge Learned Hand, in a series of cases, has recognized the psychological feat that this solution of the dilemma demands of juries. He thus stated the problem:

"In effect, however, the rule probably furthers, rather than impedes, the search for truth, and this perhaps excuses the device which satisfies form while it violates substance; that is, the recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody else's." Nash v. United States, 54 F.2d 1006, 1007. 352 U. S. at 247, 77 S.Ct. at 302.

This position taken by Justice Frankfurter and joined by Justices Black, Douglas, and Brennan later became the law when *Delli Paoli* was overruled by the Supreme Court in Bruton v. United States, 391 U.S. 123, 126, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). As Justice Jackson said in his concurring opinion in Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949), "The naive assumption that prejudicial effects can be overcome by instructions to the jury, . . . all practicing lawyers know to be unmitigated fiction."

The use of limiting instructions as a means to avoid severance has had many critics.[3] The criticism is summed up in Barton v. United States, 263 F.2d 894, 898 (5th Cir. 1959), in which the Fifth Circuit reversed a conviction for failure to grant a severance even though a limiting instruction was given. The court doubted whether the jury could carry out the instruction since "[t]o do so would require twelve minds more perfectly disciplined than those of the average human jurors."

In view of the foregoing, we need not consider the other issues in this appeal.

The judgment of conviction is reversed and the case is remanded for a new trial.