**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**James V. PACENTE, Defendant-
Appellant.**

**No. 72–1988.**

United States Court of Appeals,
Seventh Circuit.

Argued en banc April 10, 1974.

Decided Aug. 6, 1974.

Certiorari Denied Dec. 9, 1974.
See 95 S.Ct. 623.

Swygert, Chief Judge, dissented on basis of opinion of majority of division of court which originally heard and decided appeal.

Sprecher, Circuit Judge, dissented with statement.

Julius Lucius Echeles, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and FAIRCHILD, CUMMINGS, PELL, STEVENS and SPRECHER, Circuit Judges.

FAIRCHILD, Circuit Judge.

Defendant Pacente appealed from convictions of extortion under 18 U.S.C. § 1951, and of a false material declaration before a grand jury, under § 1623. A panel of this court reversed and remanded for a new trial. United States v. Pacente, 490 F.2d 661 (7th Cir. 1973). Pursuant to the government's suggestion, we reheard the appeal *en banc*.

Defendant, a Chicago police officer, was indicted on two counts. The first charged the extortion of $200 from Ko-

vacevic, a liquor store owner. The second charged that defendant made a materially false declaration to the grand jury in denying that he had ever received a certain $200 check, and alleged that he had in fact received it at the time of the alleged extortion. Before trial, defendant moved that the court require the government to elect on which count to proceed, or alternatively, order separate trials.[1] The district court denied this motion.[2] Defendant does not appear to have renewed the motion during the course of the trial, although he did unsuccessfully raise the issue in his motion after verdict.

The government's evidence is summarized in 490 F.2d 662–663 and requires only brief description here. Kovacevic, owner of Chicago-Oak Liquors, testified that on June 10, 1971, defendant entered his store and accused him of having sold liquor to a minor. Defendant informed Kovacevic that he would be arrested, and then asked, "How much money can you give me?" After negotiations, Kovacevic gave defendant a check for $200 payable to cash; no arrest occurred. The parties stipulated that, before the grand jury, the prosecutor had shown defendant a $200 Chicago-Oak Liquors check, dated June 10, 1971, signed by Kovacevic and payable to cash. Defendant then denied receiving the check.

## I.

■ Defendant argues that the indictment misjoins the extortion and false declaration counts contrary to Rule 8(a), F.R.Cr.P., and, even if a joint indictment is permissible, that Rule 14 requires separate trials.

Rule 8(a) provides:

"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

As stated by the panel, both offenses are " 'based on the same act or transaction': Pacente's taking of the $200 from Kovacevic"[3] and both require substantially the same proof. See United States v. Sweig, 441 F.2d 114, 118–119 (2d Cir. 1971), cert. denied, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed. 711. We conclude, as did the panel, that Rule 8(a) permitted joinder.

Rule 14, F.R.Cr.P., provides in part:

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."[4]

---

1. The basis for the motion was "[t]he joinder of the two counts in this Indictment would prejudice the Defendant and that his appearance before the Grand Jury investigating the instant cause might lead to an improper conclusion, and would, therefore, confuse and mislead the jury and prejudice the jury against the Defendant."

2. In a memorandum opinion and order, the district court stated that the counts were properly joined under Rule 8(a), F.R.Cr.P., because "the indictment charging perjury relates to the circumstances alleged in the extortion count." Regarding discretionary severance, the court noted that the allegation of prejudice was highly speculative; that the government would have "to prove essentially the same facts in two separate trials if a severance were granted. See United States v. Sweig, 316 F.Supp. 1148, 1158 (S.D.N.Y. 1970)"; and concluded "joinder is not likely to be unfair to the defendant, but rather would put an undue burden on the Government."

3. 490 F.2d at 663.

4. Compare ABA Standards, Joinder and Severance § 2.2(b), Approved Draft, 1968. The standard for severance of related offenses, where application is made before trial, is whether "it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." In commentary, it is said: "Whether a severance of related offenses should be granted must

■ The grant or denial of severance or separate trials under Rule 14 is discretionary. See, e. g., United States v. Kahn, 381 F.2d 824, 841 (7th Cir. 1967) cert. denied, 389 U.S. 1015, 88 S. Ct. 591, 19 L.Ed.2d 661; United States v. Quinn, 365 F.2d 256, 267 (7th Cir. 1966). Denial of relief will produce reversal only if abuse of discretion is shown. United States v. Rogers, 475 F. 2d 821, 828 (7th Cir. 1973).

■ Review of the exercise of this discretion must be based on the state of the record at the time of the motion. *Rogers, supra.*

In United States v. Sweig, 316 F. Supp. 1148 (S.D.N.Y. 1970), aff'd 441 F.2d 114 (2d Cir. 1971), cert. denied, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711, Sweig and Voloshen were indicted for conspiracy to defraud the United States, and a number of overt acts were alleged. A number of other counts charged one or the other defendant with perjury in testimony before the grand jury concerning the transactions charged as overt acts. Because joint trial of defendants on the conspiracy count was unquestionably permissible, and because substantially all the evidence on the perjury counts could properly be heard in such joint trial for conspiracy even if the perjury counts were absent, the district court denied severance of defendants (and apparently separate trials of the perjury counts), but did so without prejudice to a renewed application later on, noting that "It remains possible, of course, that different things or a different light may appear as the case advances toward or through the trial stage."

Voloshen pleaded guilty. Sweig was convicted and appealed, arguing that the conspiracy and perjury counts should not have been tried together. In affirming, the Second Circuit noted that Sweig had not taken advantage of the willingness of the district court to reconsider at a later stage and held that under the circumstances, the denial of the motion was not plain error. Evidently the court of appeals deemed it was not an abuse of discretion to deny separate trials where the sole ground of the motion was that one count charged conspiracy and other counts charged perjury before the grand jury with respect to elements of the conspiracy.[5]

"To find an abuse of discretion it would be necessary, in effect, to find that the facts and law presented to the trial judge at the time of the motion for severance demonstrated that a trial under joinder was likely to be unfair and that the trial was in fact unfair." *Kahn, supra,* 381 F.2d at 841. See also United States v. Blue, 440 F.2d 300, 302 (7th Cir. 1971), cert. denied, 404 U.S. 836, 92 S.Ct. 123, 30 L.Ed.2d 68.

Defendant's claim of prejudice is based on the supposed effect on the jury's consideration of Count I of information the jury would glean from Count II. One of the allegations of Count I was that defendant obtained $200 from Kovacevic in June, 1971. Count II charged that defendant declared to the grand jury under oath that he never received a $200 Kovacevic check, payable to cash, dated June 10, 1971, and charged that such declaration was false in that he had received such check on

remain largely within the discretion of the trial judge upon consideration of the circumstances of the individual case."

5. In a similar case the Second Circuit has interpreted *Sweig* as holding both that commonality of proof of the conspiracy and perjury crimes permitted denial of a Rule 14 pretrial motion for separate trials, and that an appellant who fails to renew his motion on the eve of trial, may not raise the claim on appeal. United States v. Carson, 464 F.

2d 424, 436 (2d Cir. 1972), cert. denied, 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219. Although our present decision is not based on waiver by failure to renew the pretrial motion, ABA Standards, Joinder and Severance, § 2.1(b), Approved Draft, 1968, provides:
  "If a defendant's pretrial motion for severance was overruled, he may renew the motion on the same grounds before or at the close of all the evidence. Severance is waived by failure to renew the motion." See Commentary, pp. 27–28.

June 10. Competent evidence that defendant received the check June 10 would tend to establish an element of both counts. Defendant argues that in considering whether or not defendant received the $200 as charged in Count I, the jury would not only have before it such competent proof, but, in addition, would be aware from Count II (and proof of defendant's grand jury testimony) (1) that defendant had told the grand jury he did not receive the check, and (2) that the grand jury did not believe the defendant. If Count I were tried separately, on the other hand, the jurors would be unaware of (1) and (2).[6]

It is claimed that the jury's awareness of (1) and (2) was prejudicial to fair consideration of Count I because the grand jury's disbelief of defendant's denial would discredit defendant's denial at trial if he chose to testify, and would in any event tend to make the proof against him seem more persuasive.

The view which the trial jury ought to take is that each count is a mere accusation. Although the issue concerning receipt of the $200 check was central to each count, proof on that issue was to be weighed and the issue resolved according to the instructions of the court, and not differently by reason of the presence of two accusations as to both of which the issue was significant. In order to find merit in defendant's position, we would have to assume that the trial jurors will treat Count II not merely as a formal accusation of a false declaration, but as a pronouncement, worthy of respect, of an opinion concerning Count I. Trial jurors may in fact know what a grand jury is and how it functions. A trial juror may or may not realize that the

standard of certainty required of a grand jury is probable cause to believe that a defendant has committed an offense, and may believe that a grand juror will not vote to indict for a false statement unless personally convinced that the witness lied. Conceivably a trial juror may be influenced in deciding to believe a witness' testimony by the fact that the grand jurors heard the same testimony and did not believe it.[7]

These things are all conceivable, but it is the judgment of a majority of this court that it is an unwarranted over-refinement to speculate that they present a significant danger that the trial jurors, acting together, will give weight to the conclusion reached by the grand jurors and fail to decide the issues of fact according to their own proper evaluation of the evidence.[7a]

Jurors are ordinarily, and were in this case, fortified in viewing the indictment as mere accusation, by instructions from the court. They were told:

"The indictment that I am going to refer to in a few moments is not evidence of the defendant's guilt, it is simply, as I told you before [presumably on voir dire], the manner by which the government accuses a person of a crime and you should not be prejudice[d] against a defendant because an indictment has been returned against him. . . .

"You are instructed to consider the testimony given by the defendant Pacente before the Grand Jury on February 22nd only as evidence under Count 2 of the indictment and you should not consider it as evidence on any other count in the indictment. . . .

6. The government does argue at least the possibility that it could prove (1) as a false exculpatory statement and that if defendant were to present testimony as to reputation, as happened here, the government could inquire whether the witness knew of Count II, and thus make the jurors aware of (2).

7. At trial in a single count, a juror may conceivably, though improperly, give some

weight to a belief that a number of grand jurors have already decided the same issue.

7a. The rationale of the panel's earlier decision in *Pacente* was rejected. United States v. Isaacs, 493 F.2d 1124, 1159–1160, 1167 (dissenting opinion), 1169 (dissenting opinion on petition for rehearing), 7th Cir. 1974), cert. den. 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974).

"Now, there are two counts in this indictment, and, as I have told you, each one charges a separate crime. You should consider each one separately. The defendant's guilt or innocence of the crime charged in one count should not affect your verdict on the other count. . . ."

We think these instructions were a meaningful protection against the possibility that the trial jurors would give weight, in considering whether to convict on Count I, to the determinations the grand jurors made in indicting on Count II. The feared reaction is not so natural, instinctive, or compelling as the one which caused the Supreme Court to reject as inadequate protection the instruction to disregard as to one defendant the incriminatory portion of another defendant's admissions involved in Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968).

"Our theory of trial relies upon the ability of a jury to follow instructions." Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954). "Of course, curative instructions are no panacea, . . . but our jurisprudential system assumes, at least to some extent, that juries are able to grasp the fundamental distinction between allegations in an indictment and evidence pointing toward guilt." Dallago v. United States, 138 U.S.App.D.C. 276, 427 F. 2d 546, 552, fn. 13 (1969).

United States v. Grady, 185 F.2d 273 (7th Cir. 1950) and United States v. Douglas, 155 F.2d 894 (7th Cir. 1946), relied on by defendant, are inapposite. In those cases, affidavits attesting to facts supporting the charges in the criminal informations were sent to the jury along with the informations. We reversed because the defendant was deprived of the right to confront the affiants.

In Douglas, supra, at 895–96, the court observed: "No complaint is made because the information was permitted to go to the jury, but the criticism is directed solely at the affidavits. It is one thing to send to the jury an indictment or information, the accusation against the defendant, but something entirely different to send affidavits containing the government's proof in support of such accusation." See also Grady, supra, at 275. The grand jurors who voted Count II are analogous to the unconfronted affiants in Grady and Douglas only if it is assumed that the petit jury treats Count II as evidence with respect to Count I.

Defendant suggests that prejudice was inevitable at a joint trial because of a factor unique to this case: At the time of the alleged false declaration, Rule 51 of the Chicago Police Department prohibited an officer's refusal to testify, on grounds of self-incrimination, before a grand jury. This court recently held Rule 51 unconstitutional "to the extent that it denies police officers the privilege against self-incrimination where criminal prosecution may follow." Confederation of Police v. Conlisk, 489 F.2d 891, 895 (7th Cir. 1973), cert. denied, sub nom. Rochford v. Confederation of Police, 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974). When defendant appeared before the grand jury, however, his choice appeared to be either to relinquish the Fifth Amendment privilege or risk the loss of his employment. He contends that the false declaration charge was a product of that dilemma. In his view, it was unfair to require him simultaneously to defend both the extortion and false declaration counts based on his coerced denial of the facts underlying the extortion.

We are unable to agree with this analysis. First, the pressures to which the rule subjected a policeman-witness at grand jury proceedings have little bearing on the propriety of a joint trial on the resulting charges. In essence, defendant's argument is that the rule made it unfair to question him before the grand jury and indict him for a false answer. If the argument were accepted, the relief should be dismissal of Count II, not separate trials.

Despite, however, the threat of discharge implicit in the department rule, the false declaration count was not improper. Before the grand jury, defendant could have invoked the privilege against self-incrimination, and refused to answer regarding receipt of the $200 check. In that event, despite the rule, the department could not lawfully have discharged him for his insistence on the privilege. Gardner v. Broderick, 392 U. S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Sanitation Men Ass'n, Inc. v. Sanitation Comm'r, 392 U.S. 280, 88 S. Ct. 1917, 20 L.Ed.2d 1089 (1968). This was the court's holding in Confederation of Police v. Conlisk, *supra*. On the other hand, defendant could, as he did, waive the privilege and answer. In that event, his testimony regarding past conduct could not be used against him in a criminal proceeding involving such conduct. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). The compulsion of the rule does not, however, justify a witness in testifying falsely. "In short, while a public employee may not be put to the Hobson's Choice of self-incrimination or unemployment, he is not privileged to resort to the third alternative, i. e., lying." United States ex rel. Annunziato v. Deegan, 440 F.2d 304, 306 (2d Cir., 1971). Whether defendant's denials of wrongdoing were true or false was for the petit jury to decide. Nothing, however, about Police Department Rule 51 precluded prosecution for false declarations. See discussion United States v. Devitt, 499 F.2d 135 at 140–142 (7th Cir. 1974).

For these reasons, we conclude that the district court was within its discretion in deciding that the probability of prejudice at a single trial on both offenses was too speculative to require severance. The factors available to the court at the pretrial motion stage did not dictate a contrary result, and nothing emerged during the trial to refute the initial ruling. In light of this, the court was correct in endeavoring "to balance possible prejudice to the defendant from joinder with the public interest in efficient use of judicial time through joint trial of defendants and offenses which are connected." United States v. Rogers, *supra*, at 828.[8] The district court did not abuse its discretion in denying the motion for separate trials under Rule 14.

## II.

Defendant asserts four additional arguments for the reversal of his convictions. The panel which first heard the appeal found it unnecessary to reach these contentions, but in view of our different conclusion on the matter of separate trials, the other points must now be considered.

### A. *Effect on interstate commerce.*

Defendant argues that there was no proof that the extortion obstructed, delayed, or affected interstate commerce.[9]

At trial, the parties stipulated to the facts pertinent to this contention: During 1971, Chicago-Oak Liquors (Kovacevic) purchased beer and liquor on a regular basis from distributors located in Chicago. These distributors obtained their beer and liquor from sources outside Illinois.

Defendant's argument that the goods had come to rest in Chicago and that the sales from the distributors to Chicago-

8. See United States v. Teemer, 214 F.Supp. 952, 954 (N.D.W.Va. 1963):
"The exercise of the [Rule 14] discretion involves consideration balancing possible prejudice to the defendants in the trial of the several offenses in one trial against the inconvenience and expense to the Government, the court and the jurors of holding separate trials where so many factual and legal issues are in common."

9. 18 U.S.C. § 1951(a) provides penalties for one who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do. . . ."
Section 1951(b)(3), quoted in the text, *infra*, defines commerce as used in section 1951 so as to include interstate commerce.

Oak Liquors were purely intrastate transactions has been disposed of in United States v. DeMet, 486 F.2d 816, 821–822 (7th Cir. 1973), cert. denied, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974). The facts were sufficiently similar to those in the present case. The court observed:

"Although [the tavern-owner's] business was primarily local, depletion of [his] assets by the goods and money extorted, or the cessation of his business if he did not yield and his fears were realized, would tend to reduce the demand for and amount of beer and liquor moving into Illinois. The effect on interstate commerce would exist, though small by most standards, and only indirectly caused by defendant's acts. * * *

* * * * * *

"Where the victim of extortion, as here, customarily obtains inventory which has come from outside the state, obstruction and delay of and effect upon commerce may, for the purpose of the Hobbs Act, be found in curtailment of the victim's potential as a buyer of such goods, This may be traced either through the depletion of his assets by his fulfillment of the extortionate demands or the harm which would follow if the threats were carried out." [10]

■ Defendant also argues that an inadvertent omission from instructions on the effect on commerce, though not challenged at the appropriate time, is reversible error.

18 U.S.C. § 1951(b)(3) defines "commerce" for Hobbs Act purposes as:

"Commerce within the District of Columbia, or any territory or possession of the United States; *all commerce between any point in a state, territory, possession or the District of Columbia, and any point outside thereof;* all commerce between points with-

in the same state through any place outside such state, and all other commerce over which the United States has jurisdiction." (Italics ours.)

The italicized second element of the definition is the element most specifically germane to the evidence in this case. It seems quite clear that the court intended to read the second element, either alone or followed by the third and fourth elements. Inadvertently the court skipped to the third element and instructed only:

"And the term 'commerce' means all commerce between points within the same state through any place outside such state and all other commerce over which the United States has jurisdiction."

Standing alone, the statement is literally correct, but not very helpful in this particular case. No one called the matter to the court's attention. Although the court did not ask for objections at the close of the instructions, under Rule 30, F.R.Cr.P., there was an adequate opportunity at a short colloquy about other matters immediately after the jury retired.

In the context of the entire record we do not consider the omission "basic and highly prejudicial error." Cf. United States v. Esquer, 459 F.2d 431, 435 (7th Cir. 1972), cert. denied, 414 U.S. 1006, 94 S.Ct. 366, 38 L.Ed.2d 243; United States v. Malasanos, 472 F.2d 642, 644 (7th Cir. 1973); United States v. Cantu, 501 F.2d 1019 at 1021 (7th Cir. 1972). Rule 30 F.R.Cr.P. It must have been clear to all that commerce between Illinois and other states was being referred to.[11]

In an opening statement government counsel acknowledged that the government must show that the alleged extortion "in some way affected interstate commerce" and said there would be stipulated evidence to show that Kovacevic

---

10. *See also* United States v. Gill, 490 F.2d 233, 236–237 (7th Cir. 1973) cert. denied 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1139 (1974).

11. Cf. *Gill, supra,* fn. 10, pp. 237–238.

bought beverages from local distributors who had bought them from sources outside Illinois. The parties stipulated that three representatives of distributors in Chicago would testify, if called, that he sold merchandise to Kovacevic which had been bought from a number of persons at specified locations outside Illinois.

In final argument government counsel said it is clear that Kovacevic dealt in products that came from outside Illinois, and that the extortion affected interstate commerce. In response defense counsel referred to the stipulated testimony and asked whether there wasn't a reasonable doubt whether taking $200 away from the tavern owner "interfered with interstate commerce."

During the instructions, the court reviewed the indictment, and mentioned the allegation that articles "manufactured in various states other than Illinois were purchased and to be purchased." The court said at another point that the government need not prove that a particular shipment from out of state was obstructed or delayed, and referred to "the depletion of the [re]sources of the business engaged in interstate commerce."

### B. *Instruction as to separate consideration of counts.*

The district court instructed: "Now, there are two counts in this indictment, and, as I have told you, each one charges a separate crime. You should consider each one separately. The defendant's guilt or innocence of the crime charged in one count should not affect your verdict on the other count and *if you find the defendant guilty beyond a reasonable doubt of either of the crimes charged in the indictment, then a verdict of guilty should be returned.*" (Italics ours.)

Defendant suggests that the italicized portion is open to the construction that if the jury found defendant guilty of only one count, it should return a general verdict of guilty. Such a construction is not a necessary one, and would be inconsistent with the preceding portion of the same sentence. Moreover, the court furnished three forms of verdict, one for a verdict of guilty on both counts, one for not guilty on both, and one for guilty on one (with the number to be inserted) and not guilty on the other. These forms were read and their use explained. The jury could not reasonably have understood the instruction as suggested by defendant.

### C. *Excuse of juror during deliberations.*

Defendant contends that an incident during the jury's deliberations deprived him of his Sixth Amendment right to a jury trial. After selecting 12 jurors, but prior to the opening of testimony, counsel had signed and filed an agreement stating:

> "It is hereby stipulated by and between the parties hereto by their respective attorneys that in case one but not more than two jurors shall be excused from the panel by reason of illness or for any other good cause as determined by the Court, that the trial may proceed before the remaining members of the panel with the same force and effect as if a full panel were present."

The 12 jurors heard the evidence, received their instructions, and retired to consider their verdict. Sometime during the first evening of deliberations, the marshal received a call from the husband of juror Woodson informing him that Mrs. Woodson's father was seriously ill and not expected to live. The marshal transmitted this information to the district judge. The judge, without consulting counsel, excused Mrs. Woodson.

Defendant argues that the stipulation was not binding because, although signed by his counsel, there is nothing in the record indicating the defendant himself agreed to it. Rule 23(b), F.R. Cr.P., provides: "Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the

approval of the court that the jury shall consist of any number less than 12."

Nothing in Rule 23(b) suggests that counsel's signature on a stipulation for a reduced size of jury does not bind the party he represents if the record fails to show that the party authorized counsel to stipulate. During the progress of a trial, it is ordinarily presumed that an attorney of record has authority to bind the party he represents as to matters of procedure. 7 Am.Jur.2d 120, Attorneys at Law § 121. Although policy considerations may cause courts to forego reliance on that presumption as the matter stipulated rises in stature, the Supreme Court has "squarely rejected the argument that . . . any waiver of constitutional rights [is] ineffective unless deliberately made and expressly approved by the defendant." United States ex rel. Allum v. Twomey, 484 F. 2d 740, 745 (7th Cir. 1973).

Absence of recorded personal expression by defendant of consent to reduction in size of a jury has been held not to be a ground of collateral attack. Horne v. United States, 264 F.2d 40, 41–43 (5th Cir. 1959), cert. denied, 360 U.S. 934, 79 S.Ct. 1460, 3 L.Ed.2d 1549; Williams v. United States, 332 F.2d 36, 38 (7th Cir. 1964), cert. denied, 379 U.S. 976, 85 S.Ct. 672, 13 L.Ed.2d 566 (1965). Agreement by counsel has been held sufficient on direct appeal. Beatty v. United States, 377 F.2d 181, 185 (5th Cir. 1967). Cf. United States v. Vega, 447 F.2d 698, 700 (2d Cir. 1971) where the record also showed that counsel had conferred with his client.

■ The record before us does not show a colloquy in the presence of defendant at the time the stipulation was signed by his counsel and filed, the first day of trial. It does show a colloquy in open court the morning after the juror had been excused pursuant to the stipulation and while the jury continued to deliberate. The judge announced the facts concerning the excused juror. Defense counsel objected "notwithstanding the stipulation" on the ground he had

not been notified. Defendant said nothing. The judge later indicated a plan to let the jury deliberate until about 11 a. m., give a modified Allen instruction, let the jury deliberate until noon, and then discharge it if no verdict had been reached. Defense counsel then said: "My defendant's and my suggestion, your Honor, just to leave them wait. We would object to any Allen Charge and I will object to them being discharged, your Honor." Defendant remained silent. We conclude that defendant is not in a position to repudiate his attorney's authority to agree to reduction in the size of the jury.

■ Defendant asserts three additional objections to juror Woodson's being excused. First, he contends that the illness of the juror's father did not fall within the terms of the stipulation permitting excuse "by reason of illness or for any other good cause as determined by the court." We think that the district judge acted within the discretion conferred by the stipulation in determining that the event constituted good cause. Cf. Rogers v. United States, 319 F.2d 5, 7 (7th Cir. 1963), cert. denied, 375 U.S. 989, 84 S.Ct. 524, 11 L.Ed.2d 475 (1964) (snowbound juror); United States v. Houlihan, 332 F. 2d 8, 12–13 (2d Cir. 1964), cert. denied, 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37 (nurse-juror excused due to illness of patient).

Second, defendant argues that the stipulation only authorized release of a juror during the receipt of evidence, not after the jury retired to deliberate. The stipulation, however, contains no such limitation, and the language of Rule 23(b) permitting stipulation "any time before verdict" clearly requires none.

■ Finally, defendant argues that the district court should have notified defense counsel before excusing Mrs. Woodson. The second circuit rejected a similar contention in United States v. Houlihan, *supra,* at 13:

"Although every effort should be made to afford such an opportunity,

we do not think that failure to do so [*i. e.,* notify counsel before relieving a juror] in a case such as this presents grounds for reversal. Situations may sometimes arise when a respect for the rights of jurors will require the judge to take immediate action without consulting counsel—*e. g.,* if a juror is taken so ill that he cannot come to court or has a family emergency requiring him to leave during the night or over a weekend."

Defendant asserts that, had the court consulted his counsel, he would have insisted on verifying the illness of Mrs. Woodson's father. However, the parties had stipulated that the court would determine what constituted good cause. We think notice was not essential to the exercise of the function described. See United States v. Vega, *supra*; United States v. Ricks, 155 U.S.App.D.C. 57, 475 F.2d 1326.

### D. *Denial of motion for new trial on ground of newly discovered evidence.*

▪ At trial Kovacevic identified defendant as the man who was in his store in April and June, 1971, and with whom he had the transaction involving the $200 check. On cross-examination, he was asked, among other matters of the man's appearance, whether he had a moustache. Kovacevic answered "No." Defendant's wife, sister-in-law, and barber testified that defendant had a full moustache at the time of the alleged extortion. Defendant produced a photograph in which he appeared with a moustache and which he said was taken in February, 1971.

Defendant's motion for new trial was supported by the affidavit of Lascaro. Lascaro stated that he was an attorney; that he had appeared in court on June 17, 1971 representing a client arrested by defendant; that defendant was also present and had a moustache.

In denying the motion, the district judge (who, of course, had seen and heard the witnesses) indicated that he regarded the Lascaro testimony as cumulative, and unlikely to change the result since a witness could be mistaken as to a matter like a moustache and still make a correct identification. Two of the propositions which must be established in support of a motion for new trial because of newly discovered evidence are that the evidence would probably produce a different verdict and is not merely cumulative. Grant or denial of the motion is discretionary. United States v. Curran, 465 F.2d 260, 264 (7th Cir. 1972). We find no abuse of discretion here.

The judgment appealed from is affirmed.

SWYGERT, Chief Judge (dissenting).

I dissent and adopt as the basis for my dissent the opinion of the majority of the division of court which originally heard and decided this appeal. That opinion is reported at 490 F.2d 661 (7th Cir. 1973).

SPRECHER, Circuit Judge (dissenting).

I dissent on the basis that I believe that the district court abused its discretion under the facts of this case—that is, by trying together a single substantive count and a single perjury count involving receipt of the same $200 check, with each count tracking the other with a double-teaming effect. Whether discretion is abused must be separately decided in each case, but I would find abuse here.