UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank J. GILL and James Fahey,
Defendants-Appellants.

Nos. 72–1689, 72–1690.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1973.

Decided Dec. 28, 1973.

Anna R. Lavin, John J. Muldoon, Julius Lucius Echeles, Chicago, Ill., for defendants-appellants.

James R. Thompson, U. S. Atty., William T. Huyck, Asst. U. S. Atty., Chicago, Ill., Sidney M. Glazer, Robert J. Vedatsky, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and KILEY, Circuit Judge.

SWYGERT, Chief Judge.

Defendants Frank J. Gill and James Fahey appeal from their convictions of extortion and perjury, having been found guilty of these crimes by a jury. Gill was convicted of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, and of making a false material declaration before the grand jury in violation of 18 U.S.C. § 1623. Fahey was also convicted for the same violations. Gill received two four-year concurrent sentences and Fahey received two three-year concurrent sentences.

The evidence viewed most favorable to the Government establishes the following. Gill was a lieutenant and Fahey a sergeant with the Chicago Police Department. Stojan Kovacevic was the licensee of a combination tavern and liquor store called the Chicago-Oak Liquors. His brother, Boris, was a bartender there. Sometime in early July 1971, Chicago police officer Reddon entered the liquor store and told Kovacevic that he had sold beer to a minor. Kovacevic could not recall the sale so Officer Reddon left the store and returned shortly with the minor to whom the beer had been sold. After a conversation between Kovacevic and Reddon, Reddon left with the minor.

A short time later Lieutenant Gill and Sergeant Fahey entered the liquor store. Gill told Kovacevic that he had sold liquor to a minor. Kovacevic said he could not recall this and suggested that the officers search the minor for another identification card. Gill and Fahey then left and returned shortly and told Kovacevic that they did not find any other identification on the minor. Kovacevic said that he still did not believe it. Gill asked him what he was going to do; Kovacevic replied that he did not know. Gill then said that he would have to appear before the Liquor Commissioner. Kovacevic asked if something

could be done; Gill asked what he meant. Kovacevic then offered Gill $150, but Gill countered with a demand for $500. They finally agreed on $300. Kovacevic told his brother, Boris, that he was giving the money because he feared the loss of his license as well as his business.

Constantine (Dino) Sanichas was in the tavern during the time in question and saw Fahey, with whom he was acquainted. Sanichas approached Fahey and asked what was happening. Fahey said that the owners were caught selling liquor to minors and asked Sanichas if he knew the owners. Sanichas said that he did. Fahey then asked Sanichas to talk to them and explain that "it would be $500 for the owners to be given a pass, excused." After Fahey left, Sanichas spoke with Boris and told him that the police officer wanted $500; Boris said that he couldn't pay it. Sanichas then suggested $300, to which he agreed. After Fahey had returned to the tavern, Sanichas told him, "He's willing to pay $300, to give $300 for the pass, so he won't be arrested." Fahey then told Sanichas to get the money and meet him on the corner. Fahey left. Sanichas told Boris that Fahey would accept $300, whereupon Boris produced the $300. Sanichas left the bar, met Fahey on the prearranged corner, and gave him the $300. About four to five weeks later Fahey met Sanichas and gave him $40.

Both Gill and Fahey were called before the grand jury. Gill denied asking the owner or anyone else for money when he was in the Chicago-Oak Liquors. Fahey denied receiving money from Sanichas.

Subsequently, they were jointly indicted in Count I for extortion. Gill was charged in Count II and Fahey in Count III for false declarations to the grand jury.

I

The first contention made by the defendants is that the commerce affected by the extortion was not of an interstate nature. They argue that there was no evidence that the beverages sold to the tavern and liquor store came from a distributor or manufacturer from outside of Illinois, despite a stipulation that the beverages were manufactured in a state other than Illinois. It is maintained that the beverages, citing Brown v. Houston, 114 U.S. 622, 5 S.Ct. 1091, 29 L.Ed. 257 (1885), were no longer in interstate commerce, having come to rest at the distributor's warehouse in Chicago before they were resold to Chicago-Oak Liquors.

The fallacy in the argument is that the Hobbs Act not only forbids extortion which interferes with interstate commerce but also extortion which affects interstate commerce. Congress' power to regulate interstate commerce is very broad. Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 253–258, 85 S.Ct. 348, 13 L.Ed.2d 258 (1946); Wickard v. Filburn, 317 U.S. 111, 118–129, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

The defendants make the alternative argument that the extortion of $300 from the tavern owner had, to say the least, a *de minimis* effect on commerce. Stated differently, they say it is unreasonable to infer that the owner's depletion of funds to the extent of $300 could have affected his ability to transact business, including the purchase of liquor from out of the state. An identical argument was made in the recent case of United States v. DeMet, 486 F.2d 816 (7th Cir., 1973). There this court, speaking through Judge Fairchild, rejected the argument:[1]

Although King's business was primarily local, depletion of King's assets

---

[1]. The author of this opinion stated a view in a prior case, United States v. Amabile, 395 F.2d 47, 54 (7th Cir. 1968), that is in opposition to those expressed by Judge Fairchild in *DeMet*. With reluctance, the author accepts Judge Fairchild's opinion in *DeMet* as the law of the circuit. *See* concurring opinion, Swygert, C. J., United States v. DeMet, at pp. 822 and 823.

by the goods and money extorted, or the cessation of his business if he did not yield and his fears were realized, would tend to reduce the demand for and amount of beer and liquor moving into Illinois. The effect on interstate commerce would exist, though small by most standards, and only indirectly caused by defendant's acts.

\* \* \* \* \* \*

Section 1951 clearly contemplates a full application of the commerce power. It proscribes extortion which "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce. . . ."

\* \* \* \* \* \*

Because Congress has seen fit to exercise its full power under the commerce clause, extortionate conduct having any arguably *de minimis* effect on commerce may nevertheless be punished. At pp. 821–822.

■ Fahey raises the additional issue that the Twenty-first Amendment has precluded the enforcement of the Hobbs Act in this case since the amendment gave to the states the power to regulate traffic in intoxicants. Section 2 of the Twenty-first Amendment prohibits any state-restricted transporting or importing of liquor for use or delivery therein which crosses state lines. This state preemption in regulating liquor does not preclude the federal government from prohibiting extortion which affects interstate commerce under authority of the Commerce Clause.

### II

■ Defendants next contend that the Government proved bribery and not extortion. They rely heavily on Stojan's testimony that he offered Gill $150 without any demand by the police officers. The offer of the $150 came after Gill had asked Stojan what he was going to do and told him that he would have to appear before the Liquor Commissioner. After Stojan offered $150, Gill said, "No, I will take $500." Fahey approached Sanichas and asked him to tell the owners that "it would be $500 for the owners to be given a pass, excused." The jurors could reasonably have inferred from the evidence that the money was obtained through fear of economic loss and that Stojan offered to pay the $300 because he reasonably feared that if he did not, he would be cited for liquor violations or lose his license. Extortion, not bribery, was proved. *See* United States v. DeMet, at p. 820.

Defendants argue that extortion and bribery are mutually exclusive crimes and rely primarily on United States v. Kubacki, 237 F.Supp. 638, 641–642 (E.D.Pa.1965), for this proposition. Since there is sufficient evidence for the jury to have found extortion, it is not necessary to deal with this argument.

### III

Defendants allege that the trial judge failed to instruct on an essential element of the crime, namely, commerce. They say that the judge withdrew this element to be proved from the jury and made the determination himself. The defendants stipulated at trial that Stojan's distributors would testify that the liquor and beer they sold to him came from outside Illinois. The judge told the jurors that the defendants had agreed that the stipulated testimony proved that the beer and liquor came from out of state. Defendants, who never objected to the judge's statement and who never attempted to refute the stipulated testimony, argue on appeal that the judge improperly withdrew the question from the jury as to whether the liquor had been in interstate commerce. Counsel for Gill specifically approved and counsel for Fahey did not object to the following instruction:

In reference to the requirements of the statute that commerce or the movement of any article or commodity in commerce be obstructed, delayed or affected you are hereby instructed that alcoholic beverages were shipped to various liquor distributors in Chicago, Illinois, from locations outside

of the State of Illinois, and the Chicago-Oak Liquor distributors sold these alcoholic beverages to the Chicago-Oak Liquor Store in Chicago, Illinois.

■ It was not error for the judge to fail to define "commerce" since the defendant had agreed that the liquor sold to Stojan had come from out of state. To define "commerce" under 18 U.S.C. § 1951(b)(3) as defendants now argue would be a meaningless instruction since the jury was not called upon to make any factual determination about whether the shipment of liquor was interstate commerce. The only factual question in this regard was whether the commerce to which they had stipulated was affected by the extortion. The instructions fully covered this element of the crime.

## IV

Count I of the indictment charged Gill and Fahey jointly with a violation of the Hobbs Act; Count II charged Gill with making a false material declaration to the grand jury which investigated the extortion charge; Count III charged Fahey with a similar offense. Gill made a pretrial motion for severance under Rule 8(b) of the Federal Rules of Criminal Procedure.[2] The motion also mentioned Rule 14, Fed.R.Crim.P.[3] The motion read in part, "The defendant Gill consents to a trial of the charges contained in Counts I and II, but objects to a joint trial with Fahey which includes the charges contained in Count III." After Fahey joined in the motion, the district court denied it. Later, at the start of the trial, Gill filed a second mo-

tion for severance, claiming that the evidence to be produced at trial would place him in a position antagonistic to Fahey. He requested a separate trial. During the trial Fahey made a similar motion. Both motions were denied.

Although their briefs are far from clear, the defendants appear to argue that there was a misjoinder of counts under Rule 8(b) and that, in any event, severance should have been granted under Rule 14.

■ The defendants contend that the joinder of Counts I, II and III violated Rule 8(b). It is their position that the three counts do not constitute the "same series of acts or transactions" as required by the rule. Counts II and III do relate, however, to the occurrence which is the basis of the Hobbs Act violation alleged in Count I. The same evidence adduced to prove the Government's charge under Count I was used to prove Counts II and III. *See* McElroy v. United States, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355 (1896). Moreover, the alleged extortion and the denials of complicity here were as closely related as the misprison and the bank robbery charges in United States v. Daddano, 432 F.2d 1119 (7th Cir. 1970). There we held that the relationship of the two separate charges was "close enough that they may be deemed a 'series' under Rule 8(b)." 432 F.2d at 1125. Without the nexus between the alleged extortion and the separate false declarations there would have been an impermissible joinder under Rule 8(b); but Count I pro-

2. Rule 8(b) provides:

Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

3. Rule 14 provides:

Relief from Prejudicial Joinder. If it appears that a defendant or the govern-

ment is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

vided the nexus which permitted the joinder of the three counts.

This ruling, however, does not answer the question whether the joinder was so prejudicial that there should have been a severance under Rule 14. Gill contends that his trial on Count I should be severed from Count II; Fahey makes the same contention regarding Count I and Count III. They argue that it was prejudicial for the jurors to be aware of the fact that the grand jurors disbelieved each one's grand jury testimony denying involvement in the activity for which he was charged on the extortion count. They maintain that each defendant's credibility was impeached before he took the witness stand. We do not decide this important question, however, since in the motion for severance, filed by Gill and joined in by Fahey, Gill consented to being tried on Counts I and II and Fahey, by joining in the motion, consented to being tried on Counts I and III. Thus, they waived the very issue they now seek to present on appeal.

Another question which was asserted in the district court remains: whether the joinder was so prejudicial that the defendants should have been afforded separate trials under Rule 14. The main contention is that neither should have been compelled to be tried jointly since only Gill was charged in Count II and only Fahey in Count III. It is settled that severance under Rule 14 rests in the discretion of the trial judge, subject to correction only if there has been an abuse of discretion. United States v. Echeles, 352 F.2d 892 (7th Cir. 1965). In that case we said: " . . . [A] single joint trial, however desirable from the point of view of efficient and expeditious criminal adjudication, may not be had at the expense of a defendant's right to a fundamentally fair trial." 352 F.2d at 896. Both defend-

ants, while claiming prejudice by being tried together, provide little if any support in their briefs for their claim. The prejudice, if any, amounted to the fact that the jurors were aware that the co-defendant was charged individually with an additional crime which was separate from the charges against the other defendant. The jurors were instructed by the judge that the evidence relating to the perjury charge against one defendant could not be used as evidence to prove any other count. Under these circumstances, we are not prepared to hold that there was an abuse of discretion in granting a severance of defendants. United States v. Kahn, 381 F.2d 824 (7th Cir. 1967).

## V

Both defendants contend that the supplementary instruction given the jury after it had deliberated for some ten hours, violated this court's decision in United States v. Brown, 411 F.2d 930 (7th Cir. 1969). The instruction was substantially similar to the instruction given in United States v. Silvern, 484 F.2d 879 (7th Cir., 1973), at 882, n. 5. In *Silvern*, Judge Sprecher, speaking for the majority of the *en banc* court, held that under the circumstances of that case there was no prejudice in giving the supplemental instruction—the *Allen* charge intermeshed with the instruction suggested by the American Bar Association and recommended in *Brown*.[4] The majority also held that any conviction thereafter would be reversed if any supplementary instruction other than the exact instruction recommended in *Brown* were given to a deadlocked jury. The instant case was tried prior to the *en banc* decision in *Silvern*; accordingly, we are bound by the decision in *Silvern* in holding that no prejudice resulted from the supplemental instruction which was

4. The *Allen* charge, also known as the dynamite charge, takes its name from the case of Allen v. United States, 164 U.S. 492, 501–502, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The Supreme Court approved the giving of the instruction in *Allen*, but this circuit under

its supervisory power held in United States v. Brown, 411 F.2d 930 (1969), that the American Bar Association standards on supplementary instructions were to be followed instead of the *Allen* charge.

substantially the same as that given in *Silvern.*

Before giving the supplementary instruction with which we were concerned in *Silvern,* the trial judge, as a preamble, stated:

> In your job of determining the facts, you are reminded before each of you was accepted and sworn to act as a juror, you were asked questions regarding your competency, qualifications, fairness and freedom from prejudice or sympathy. Neither prejudice nor sympathy should play any part in your deliberations. On the faith of those answers you were accepted as jurors by the parties. Therefore, those answers are as binding on each of you now as they were then, and should remain so until you are discharged from consideration of the case.

Then, after giving the supplementary instruction, the trial judge concluded:

> In determining the guilt or innocence of a defendant, you should not give any consideration to the matter of punishment. This question is exclusively my responsibility.

We agree with the defendants that there was no particular reason why the jurors should have been reminded of their oath at the time the supplementary instruction was given or for the judge to repeat what he had told them prior to, the time the jury started their deliberations: that it was his exclusive responsibility to decide punishment. The defendants argue that it is possible for a juror to have gained the impression that if he voted not guilty, or if he did not change his vote, he would not be true to his oath. It is also argued that by singling out and repeating the instruction on punishment the judge meant for the jurors to convict and that he would take care of the punishment and possibly give favorable consideration to the defendants regarding their sentences. Such arguments, however, are speculative.

The question of coerciveness is close, but on balance we are constrained to hold that these statements do not require reversal, particularly in light of the decision in *Silvern.*

## VI

Gill contends that he was prejudiced by the Government's failure to turn over all of Stojan's pretrial statements as required by 18 U.S.C. § 3500. The assistant United States Attorney informed the court before the third day of trial that he had inadvertently left out, one page of the section 3500 material when he had tendered the statement to defense counsel. The trial judge admonished the Government not to comment on defense counsel's inability to impeach and denied Gill's motion for a mistrial. Stojan was recalled as a witness and cross-examined. At that time the missing page was available to the defendant. We have examined the page and reviewed the cross-examination and find no prejudice to Gill's defense under the circumstances. The delay in producing the one page of the statement was harmless error. Rosenberg v. United States, 360 U.S. 367, 371, 79 S.Ct. 1231, 3 L. Ed.2d 1304 (1959).

It is also contended that it was error for the trial judge to refuse to allow Gill to testify about whether he had made similar decisions in the past not to arrest minors who had purchased beverages. It is argued that this proffered testimony was affirmative evidence to prove that Gill properly exercised his discretion in not arresting the minor and not charging Stojan with a liquor violation. Whether he had made prior decisions not to arrest in similar situations was irrelevant to the question whether he extorted money on this occasion. *Cf.* United States v. Isa, 452 F.2d 723 (7th Cir. 1971).

Fahey argues that the Government failed to show that he had been advised by the prosecutor at the time of his grand jury testimony that he could purge himself of the allegedly false declaration by subsequently recanting. There is no duty on the Government

prosecutor to attempt to get the witness to recant. Perforce, failure to show that an attempt was made is not an element of the offense. 18 U.S.C. § 1623(a), (c), and (e).

The last contention raised on appeal is that the standard used by the district judge in sentencing the defendants was improper. The maximum penalty for extortion is twenty years and the maximum penalty for false declaration is five years. Gill received two four-year concurrent sentences and Fahey received two three-year concurrent sentences. The asserted improper standard was that the trial judge imposed punishment on police officers in accordance with their rank. Gill, a lieutenant, received the four-year sentence, Fahey, a sergeant, received the three-year sentence, and a patrolman sentenced about a week prior received a two-year sentence for a similar crime. The trial judge said that he felt that "only this type of deterrent" could have an effect on future crime. Courts of appeals have no reviewing power over sentencing except perhaps in the most extraordinary circumstances; this is not such a case.

The convictions are affirmed.