**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles Cornelius JAMES,
Defendant–Appellant.**

**No. 92–10043.**

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 1, 1993. *

Decided March 8, 1993.

J. Frank McCabe, Goorjian & McCabe, San Francisco, CA, for defendant-appellant.

Rodolfo M. Orjales, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellee.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

Before: ALARCON, RYMER, and T.G. NELSON, Circuit Judges.

RYMER, Circuit Judge:

The government neglected to introduce evidence that banks it accused Charles Cornelius James of robbing were insured by the Federal Deposit Insurance Corporation. Even though proof of FDIC insurance is an element of the federal crime of bank robbery, 18 U.S.C. § 2113(a), James was convicted. He appeals on the ground of insufficiency of the evidence.[1] We have to decide whether a stipulation about "the FDIC aspect of the case," made outside the presence of the jury, and the assertion by James's counsel in opening statement and closing argument that the only issue was identification, suffice to uphold the verdict. We think not, and therefore reverse.

I

James was convicted of robbing American Savings Bank, Home Federal Savings, and Bank of the West during August and September, 1990 in violation of 18 U.S.C. § 2113(a). At trial, the government rested without presenting any evidence that these banks were insured by the FDIC. After the defense rested but before the close of evidence, the Assistant United States Attorney advised the court outside the presence of the jury that "I still have to draw a stipulation as to FDIC." The next day the government successfully moved, over objection, to reopen to introduce the birth certificate of James's son. Again outside the presence of the jury, the following exchange took place:

GOVERNMENT: Also I showed counsel an outline of a stipulation which I would like to read orally to the jury. It has to do with the FDIC aspect of the case.

COURT: FDIC?

DEFENSE COUNSEL: FDIC, Federal Deposit Insurance Corporation.

COURT: That is a stipulation between counsel, right?

DEFENSE COUNSEL: Yes.

COURT: When do you propose to read that stipulation?

GOVERNMENT: As soon as the jury comes out.

COURT: Fine.

But it was not read.

The court gave a boilerplate instruction on the effect of stipulations, and instructed, properly, that the government had the burden of proving beyond a reasonable doubt each element of the offense, including that the banks were insured by the FDIC.

During opening statement, James's counsel stated: "This case is indeed a very simple case. And it really is one issue. The one issue that you are going to be called upon to decide at the conclusion of the case is whether or not Charles Cornelius James ... is ... responsible for the robbery of the four banks." In closing argument, the AUSA told the jury that:

normally, the Government has to prove a bunch of elements: that someone robbed a bank; that someone used force; that money was taken; that the funds were federally insured. And normally the Government is required ... to show every element of that offense to show the defendant's guilt....

And if you recall, [defense counsel] said there is only one issue.

And in his argument, James's counsel stated:

When I started off talking to you ... I said to you this was a one issue case. I think [the prosecutor] said the same thing, there is only one issue here. The issue is did Charles Cornelius James rob a bank.

The jury thought so, and convicted James on all three counts.

II

James argues that the evidence is insufficient to support his conviction since the government failed to introduce any evidence of whether the banks were insured

---

1. James also argues that the government violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Federal Rule of Criminal Procedure 16 by failing to disclose videotapes of the robbery. We do not need to reach this issue.

by the FDIC. We will reverse a conviction for insufficient evidence if " 'reviewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Bishop*, 959 F.2d 820, 829 (9th Cir.1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

## A

■ We have repeatedly held that to support a conviction of armed robbery under 18 U.S.C. § 2113(a), the government has to prove that the money taken was from a bank insured by the FDIC. *See, e.g., United States v. Campbell*, 616 F.2d 1151, 1153 (9th Cir.), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980); *United States v. Phillips*, 427 F.2d 1035, 1037 (9th Cir.) (there is no question that a proper showing of FDIC insurance is an essential element of the crime), *cert. denied*, 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970). Here there was no evidence before the jury at all on whether the banks were insured by the FDIC. The bank employees who testified did not testify as to the FDIC status of the banks, *cf. Campbell*, 616 F.2d at 1153 (uncontradicted testimony of bank employees sufficient to show that money taken was FDIC insured), and the stipulation concerning the "FDIC aspect" of the case was not read to the jury or received into evidence. Without any evidence on the FDIC status of the bank, no rational jury could have found beyond a reasonable doubt that the banks were insured by the FDIC.

## B

■ The government, relying on *United States v. Mauro*, 501 F.2d 45, 48 (2d Cir.), *cert. denied*, 419 U.S. 969, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974), argues that the names of the banks and the bank employees' testimony indicated that the banks were large, prominent institutions, and from this the jury could have inferred that the banks were insured by the FDIC. *Mauro*, however, is distinguishable.

In *Mauro*, the government at trial established that the banks were FDIC insured and the defendant did not contest this evidence. Rather, the defendant argued that he could not be convicted of a conspiracy relating to stolen cashiers' checks since he did not know the bank was insured by the FDIC. Before discussing this issue, the court determined that the indictment was sufficient even though it did not allege that the bank was FDIC insured since the bank had the word "National" in its title. In so holding, the court took judicial notice that only banks organized under the laws of the United States could use the word "National." *Id.* at 49. The court also held that the prosecutor did not have to prove that the banks were "National" banks since their titles implied this much. Finally, the court held that even if there were an intent requirement, it was satisfied. As the court wrote, "even assuming that the national character of the bank is an element of intent rather than simply a jurisdictional fact, we are satisfied that it was established here." *Id.* at 50.

*Mauro* is thus distinguishable because evidence was introduced in that case concerning the FDIC status of the banks; the banks in this case do not have the word "National" in their title; *Mauro* concerned an intent requirement and a challenge to the indictment, not sufficiency of the evidence; and there is no question that in this circuit the FDIC status of a bank is an essential element of the crime.

The government, relying on *United States v. Houston*, 547 F.2d 104, 107 (9th Cir.1976) and *United States v. Gwaltney*, 790 F.2d 1378, 1386 (9th Cir.1986), *cert. denied*, 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987), also argues that because James stipulated that the banks were insured by the FDIC, no further evidence on the issue was required because a stipulation is conclusive proof of the fact agreed to. This argument is misplaced for two reasons. First, the contents of the "stipulation" are speculative in this case. The record only indicates that the parties had a stipulation to "the FDIC aspect of the case" which the AUSA intended to read

orally to the jury. From this, we cannot be certain what the government would have read orally, nor can we determine that the "stipulation" included evidence sufficient to establish that the banks were in fact FDIC insured. *Cf. United States v. Platenburg*, 657 F.2d 797, 800 (5th Cir.1981) (finding seven year old certificate of insurance from FDIC insufficient evidence of FDIC status). More significantly, even if the stipulation that was supposed to be read orally to the jury were crystal clear, unlike *Houston* and *Gwaltney*, the stipulation was never entered into evidence or read to the jury. *Cf. Houston*, 547 F.2d at 107 (defendant complained that stipulation was based on mistake of law and therefore should not have been submitted to the jury); *Gwaltney*, 790 F.2d at 1386 (evidence that Gwaltney challenged on appeal had been admitted upon a stipulation). There was, therefore, no fact in evidence that the jury could take as proved, conclusively or not.

The government also argues that the district court could have taken judicial notice of the FDIC status of the bank. We need not decide whether it could have or could not have, as it was not asked to take judicial notice of the FDIC status of the bank and did not do so. Nor was any judicially noticed fact presented to the jury.

Finally, the government argues that James invited error by failing to raise an objection when the stipulation was not read to the jury. The defense has no obligation to remind the government of its obligation to prove each element of a crime. It is axiomatic that the government has the ultimate burden of proof. James should not be penalized for failing to make sure the government proves its case.

### C

We cannot agree with our colleague in dissent that there was a judicial admission as to the FDIC status of the bank, which James cannot now challenge. The record does not reflect that an admission was made. While James's counsel did say in his opening statement, and argue in closing, that there was one issue in the case, we cannot conclude that by focusing his comments on the issue of identification, James's counsel thereby admitted all other elements of the crime.

This case is unlike *United States v. Bentson*, 947 F.2d 1353 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2310, 119 L.Ed.2d 230 (1992), where the defendant, who was charged with failing to file tax returns, contended that the government failed to prove that protest tax forms were not filed. Defense counsel argued that *"[t]he defense is not suggesting that returns were filed ... [but] rather that the government's evidence fails to show that protest documents were not filed." Id.* at 1356 (emphasis added). *Bentson* is inapposite since the defendant implicitly conceded that tax returns were not filed. Here, James's counsel's closing argument said nothing at all about whether the banks were FDIC insured.

Nor do we agree that James's failure to object to the government's closing argument, which seemed to narrow the case to one issue, waives the defendant's right to insist that the government prove each element of the crime. Otherwise, whenever the government has failed to present evidence on an element of a crime it would only have to make light of it in closing argument, thereby lulling the defense into failing to make a big deal of the omission. Realizing that the government had failed to introduce any evidence of FDIC insurance, James may have made a strategic decision not to object so as not to remind the government of its failure to introduce the stipulation, perhaps fearing that the government would be able to reopen the case again over his objection. Or, like the AUSA, James's counsel may simply have forgotten that the stipulation was not introduced. Either way, James should not be held accountable for the government's failure to prove its case.

Finally, we do not believe that either *United States v. Gill*, 490 F.2d 233 (7th Cir.1973), *cert. denied*, 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1139 (1974) or *United States v. Orena*, 811 F.Supp. 819 (E.D.N.Y.1992), sheds light on this case.

In *Gill*, the defendants argued that the court improperly removed an issue from the jury by not instructing on the definition of interstate "commerce," which was an element of the crime. The defendant had, however, unequivocally stipulated at trial that the goods were from out of state, and the court instructed the jury on this stipulation. Here, by contrast, the court instructed the jury that it had to find that the banks were insured by the FDIC, and there was no evidence bearing on the point. In *Orena*, the defendant unequivocally stipulated to one element of the crime—that he was a convicted felon—but objected when the government sought to introduce the stipulation. The defendant argued that the stipulation was not admissible as other crimes evidence, and that its prejudice outweighed its probative value. The court agreed and did not read the stipulation to the jury, effectively removing the element from the jury. *Orena* does not apply to this case because there is nothing about FDIC insurance that implicates Fed.R.Evid. 403 or 404.

### III

Because the government has failed to present any evidence on an essential element of the crime, we can only conclude that there was insufficient evidence to support the conviction.[2]

REVERSED.

ALARCON, Circuit Judge, dissenting.

Today, a convicted bank robber goes free, immune from further prosecution. *See Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978) (a second trial is barred under the Double Jeopardy Clause if a reversal is based upon the insufficiency of the evidence). Why? Because the jury was not expressly told that the prosecutor and defense counsel had stipulated that the jury need not decide whether the victim banks were federally insured.

I respectfully dissent because it is not necessary to read a stipulation removing a factual question from the jury. Stipulations are ordinarily read to prevent the jury from finding against the party that has the burden of producing evidence on that issue because none was presented. In this case, the prosecution, not the defendant, suffered the risk of an adverse verdict because the stipulation was not read to the jury. The jurors unanimously found that each element of the crime of bank robbery was proved beyond a reasonable doubt because they were told repeatedly by both counsel that they need not decide whether the banks were federally insured.

If the result reached by the majority were in fact compelled by prior legal authority, then I can sympathize with Mr. Bumble's frustration regarding the law's occasional absurdities.[1] I would uphold the jury's verdict because existing law does not require us to reverse the convictions in this case solely because the trial judge, the prosecutor, and defense counsel forgot that they had agreed that the stipulation would be "read" to the jury. Both counsel told the jury that they did not have to determine whether the banks' funds were federally insured. The failure to label their agreement as a "stipulation" should not require us to free a bank robber whose guilt was conclusively demonstrated. To support my view of this case, I will first set forth the facts that demonstrate that James' counsel made it clear in his opening statement, before any evidence was presented to the jury, that the defense conceded that each of the banks was federally insured.

### I.

James was indicted for robbing four federally insured banks.

---

2. Given this disposition, we do not reach James's argument that the stipulation, if there were one, was not entered into knowingly and voluntarily.

1. "'If the law supposes that,' said Mr. Bumble, squeezing his hat emphatically in both hands, 'the law is a ass—a idiot.'" Charles Dickens, *Oliver Twist* 403 (Bantam Classic ed., Bantam Books 1990) (1837).

Defense counsel began his opening statement to the jury with the following words:

This case is indeed a very simple case. And it really is one issue. *The one issue that you are going to be called upon to decide at the conclusion of this case is whether or not Charles Cornelius James, the man who is sitting right here, is the individual who was responsible for the robbery of the four banks.*

(emphasis added).

Prior to closing argument, the prosecution informed the court that counsel had agreed upon a stipulation concerning the "FDIC aspect of the case." The record contains the following colloquy:

Mr. Orjales [the prosecutor]: Also I showed counsel an outline of a stipulation which I would like to read orally to the jury. It has to do with the FDIC aspect of this case.

The Court: FDIC?

Mr. Guy–Smith [defense counsel]: FDIC, Federal Deposit Insurance Corporation.

The Court: That is the stipulation between counsel, right?

Mr. Guy–Smith: Yes.

The Court: When do you propose to read that stipulation[?]

Mr. Orjales: As soon as the jury comes out.

The Court: Fine.

The court then ordered that the jury be returned to the courtroom. When the jury was seated, the court immediately proceeded to admonish the jury regarding the limited purpose of oral argument. The court did not call upon the prosecutor to read the stipulation. Obviously, the trial judge forgot that he had agreed that the prosecutor could read the stipulation "[a]s soon as the jury comes out."

Following the court's preliminary instructions, the prosecutor was asked if he was ready to proceed. The prosecutor then proceeded to make his closing argument to the jury. He did not read the stipulation regarding the "FDIC aspect of the case" to the jury.

In describing the prosecution's burden of persuasion in this matter, the prosecutor made the following statement:

If you recall at the start of the case, the defense counsel, Mr. Smith, gave you an opening statement. And he very, very accurately pinpointed for you the one issue which you have to decide.

Normally the Government has to prove a bunch of elements: that someone robbed a bank; that someone used force; that money was taken; *that the funds were federally insured.* And normally the Government is required, and still is required to show every element of that offense to show the defendant's guilt. *But he very accurately pinpointed what it is that you have to decide.*

*And if you recall, he said there is only one issue here, whether the defendant is responsible for the robberies as set out in the indictment.*

(emphasis added).

The prosecutor correctly characterized the thrust of Mr. Guy–Smith's opening statement. Defense counsel did not object to the prosecutor's argument. In his closing argument, defense counsel reiterated the concession he made in his opening statement concerning the only factual question that the jury would have to decide. Mr. Guy–Smith argued as follows:

When I started off talking to you at the beginning which seems like much longer ago than it actually was, *I said to you this was a one issue case. I think Mr. Orjales said the same thing, there is only one issue here.* The issue is did Charles Cornelius James rob a bank? And more importantly has the Government proved to you beyond a reasonable doubt, have they carried their burden, for we have no burden. Have they carried their burden and proved to you beyond a reasonable doubt that Mr. James was the bank robber? I submit to you that they haven't.

(emphasis added). In stating that "I think Mr. Orjales said the same thing, there is only one issue here," defense counsel obviously was referring to the prosecutor's statement that it was not necessary in this

case for the Government to prove that "the funds were federally insured."

The jury convicted James on counts 2, 3, and 4 of the indictment. The jury failed to agree on a verdict regarding count 1. The remaining count was dismissed on the Government's motion.

## II.

Defense counsel did not move for a judgment of acquittal, prior to the submission of this matter to the jury, on the ground that the Government failed to introduce evidence that the banks were insured by the FDIC. James made a motion for a new trial in this matter. Trial counsel did not argue in support of James' motion for a new trial that the Government failed to present evidence regarding an essential element of the offense of bank robbery. This issue was never presented to the trial court in any manner. At no time prior to entry of judgment did James' counsel bring to the court the fact that the stipulation had not been read to the jury.

For the first time in this appeal, James argues that we must reverse the judgment of conviction because the Government failed to prove that the money that was stolen from the banks was insured by the Federal Deposit Insurance Company. "There is no question but that a proper showing that the bank was F.D.I.C. insured is an essential element of the crime [of bank robbery]." *United States v. Phillips*, 427 F.2d 1035, 1037 (9th Cir.), *cert. denied*, 400 U.S. 867, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970).

In this matter, the Government did not present evidence at trial that the money in the bank was federally insured because James' counsel entered into a stipulation to remove the FDIC aspect of the case from the jury. Furthermore, the federal insurance element was proved through defense counsel's judicial admission that the prosecutor had correctly represented to the jury that in this case it was unnecessary for the jury to decide the question whether the funds were insured by the FDIC.

The record shows that James' trial counsel entered into a stipulation regarding "the FDIC aspect of the case." There is no serious question that the parties had stipulated that the banks were insured by the FDIC. In fact, defense counsel explained to the court that the letters "FDIC" stand for the Federal Deposit Insurance Corporation.

As noted above, sufficiency of the evidence was raised for the first time on appeal. The majority speculates that James' trial counsel "may have made a strategic decision not to object so as not to remind the Government of its failure to introduce the stipulation, perhaps fearing that the Government would be able to reopen the case again over his objection." Majority opinion at p. 651. I cannot find anything in the record that lends support to this fanciful notion. Traditional rules of appellate review prohibit us from reversing a judgment by relying on rank speculation. Instead, we must draw every inference from the record that supports the judgment. *See Pasadena Research Lab. v. United States*, 169 F.2d 375, 380 (9th Cir.) (" 'It is a familiar principle, which it is our duty to apply, that an appellate court will indulge all reasonable presumptions in support of the rulings of a trial court and therefore that it will *draw all inferences permissible from the record*, and in determining whether evidence is sufficient to sustain a conviction, will consider the evidence most favorably to the prosecution.' ") (emphasis added) (quoting *Henderson v. United States*, 143 F.2d 681, 682 (9th Cir.1944)), *cert. denied*, 335 U.S. 853, 69 S.Ct. 83, 93 L.Ed. 401 (1948).

The most logical inference that can be drawn from defense counsel's statements is that he and the prosecutor were in agreement that the jury did not have to decide whether the bank deposits were federally insured. The fact that neither counsel used the magic word "stipulation" in describing their agreement to the jury does not compel reversal. The jury was made aware of the substance of the stipulation. The fact that the jury found James guilty of three out of four counts of bank robbery, although no testimony was presented regarding federal insurance, amply demon-

strates that the jurors fully understood counsels' agreement that that issue was not in dispute.

For the first time in his reply brief, James argues that "[t]he record is not clear as to what the stipulation encompassed." Appellant's Reply Brief at 3. This untimely argument by James' appellate counsel ignores his trial counsel's repeated statements to the jury that this case involved the single issue of identity, and the prosecutor's argument that both counsel had agreed it was unnecessary in this case to prove that the funds were federally insured.

### III.

James argues that even if the stipulation was valid, it was never read into evidence and therefore proof of an essential element of the crime of bank robbery was not presented to the jury. Thus, James reasons, the judgment of conviction must be reversed because the evidence was insufficient to persuade a rational jury beyond a reasonable doubt of the evidence of an essential element of the offense of bank robbery. This argument mischaracterizes the nature of a stipulation. "When parties have entered into stipulations as to material facts, those facts will be deemed to have been conclusively established." *United States v. Houston,* 547 F.2d 104, 107 (9th Cir.1976) (per curiam). *See United States v. Mohel,* 604 F.2d 748, 753 (2nd Cir.1979) ("stipulation [as to intent and knowledge] serves to remove intent and knowledge as issues in the case"). Thus, the stipulation that the funds were insured by the FDIC removed that issue from the jury's deliberations.

In a recent opinion, Judge Jack Weinstein explained that "[a] defendant is entitled to hold the government to its burden on every element of the offenses charged. *A stipulation represents a defendant's waiver of that right.*" *United States v. Orena,* 811 F.Supp. 819, 824 (E.D.N.Y. 1992) (emphasis added). In *Orena,* the Government argued that it should be allowed to inform the jury that the defendant had been convicted of a felony in the past,

an essential element of the crime with which he was charged. *Id.* at 821. Defendant had stipulated to the felony conviction, but "ask[ed] the court to keep that fact from the jury." *Id.* Judge Weinstein agreed. He concluded that informing the jury of the stipulation would be highly prejudicial to the defendant, analogizing the stipulation to "other crimes" evidence. *Id.* at 826–27.

Although it is quite true that in this matter James did not request that the contents of the stipulation be kept from the jury because of undue prejudice, this circumstance does nothing to alter the import of Judge Weinstein's opinion: there is simply no constitutional requirement that a stipulation be read to the jury in order to remove an undisputed element from the case.

In *United States v. Gill,* 490 F.2d 233 (7th Cir.1973), *cert. denied,* 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1139 (1974), defendants stipulated at trial that beer sold in the tavern from which they extorted money had travelled across state lines. *Id.* at 237. After the stipulation, the judge removed the definition of "commerce" from his jury instructions. *Id.* at 237–38. On appeal, defendants argued that the judge "withdrew this element to be proved from the jury and made the determination himself." *Id.* at 237. The court held that "[t]o define 'commerce' under [the statute] would be a meaningless instruction since the jury was not called upon to make any factual determination about whether the shipment of liquor was interstate commerce." *Id.* at 238.

No federal court has held that it is prejudicial error for a trial judge to fail to instruct a jury that the parties have stipulated to an element of a crime. It is quite true that a defendant has a right to have the facts that make up the essential elements of an offense decided by a jury. *Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *BSA, Inc. v. King County,* 804 F.2d 1104, 1110 (9th Cir.1986); *see also Duncan v. Louisiana,* 391 U.S. 145, 155–57, 88 S.Ct. 1444, 1450–52, 20 L.Ed.2d 491 (1968) (describing

constitutional right to, and importance of, jury trial). A stipulation as to an essential element of an offense, however, waives a defendant's right to a jury decision on the existence of that element. *Orena*, 811 F.Supp. at 824. *Houston*, 547 F.2d at 107.

Whether or not the jury knew of the stipulation is immaterial. Had the jury been told of the stipulation, it would have been required to consider that the facts in the stipulation had been conclusively proved.

James' argument is particularly unpersuasive given that in general it is the party that bears the burden of persuasion that is prejudiced by a failure to read a stipulation to the jury. In this case, the Government ran the risk that the jury, after being instructed that the evidence must show that the banks were federally insured, would return a verdict of not guilty based on the Government's failure to present witnesses or documents on that issue—even though the stipulation removed this factual question from the jury's consideration. James can hardly claim he was prejudiced by the Government's failure to read a stipulation concerning an issue about which the Government presented no testimonial or physical evidence.

Finally, James' appellate counsel, citing *United States v. Miller*, 588 F.2d 1256, 1264 (9th Cir.1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979), argues for the first time in his reply brief that even if there was a stipulation, James did not personally enter into it knowingly and voluntarily. "Legal issues raised for the first time in reply briefs are waived." *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2310, 119 L.Ed.2d 230 (1992).

James' counsel's comments to the jury in opening statement and in closing argument also constituted a judicial admission that the funds were federally insured. Defense counsel's statement to the jury that the prosecutor had said "the same thing," i.e., that the only issue before the jury was identification of the perpetrator, can only be construed as an adoption of the Government's comment that the jury was not required to find whether the funds were federally insured. In *Bentson*, defense counsel made the following statement during his closing argument: "The defense is not suggesting that returns were filed for 1983 and '84, which the Internal Revenue Service would consider to be valid documents. The defendant submits rather that the government's evidence fails to show that protest documents were not filed for 1983 and 1984." *Id.* We held that this "language ... was a straightforward judicial admission, not merely a concession for the sake of argument," and that it prevented the defendant from maintaining on appeal that he had filed valid tax returns in 1983 and 1984. *Id.* In the instant matter, defense counsel's admission that the prosecutor and he were in agreement that the only issue before the jury was identification bars James' claim made for the first time in this court, that we should reverse because the Government failed to prove FDIC coverage.

## IV.

I would affirm the judgment of the district court. James' counsel stipulated that the banks' funds were insured by the FDIC. He told the jury that he agreed with the prosecutor's statement that in this case the Government did not have to prove the funds were federally insured. He also admitted in the presence of the jury on more than one occasion that this element of the offense was not in dispute. Accordingly, James waived his right to have the jury determine this issue. To permit James to evade punishment for his crimes under these circumstances is clearly contrary to the interests of justice. A reversal for the failure of the prosecution to incant the word "stipulation" would result in a dismaying triumph of form over substance.