99 F.3d 1147
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth Joel NOVAK, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Christopher Ray WITTMAN, Defendant-Appellant.
 No. 95-10324, 95-10333.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 11, 1996.
Decided Oct. 15, 1996.
 
 1
 Before: O'SCANNLAIN and LEAVY, Circuit Judges, and HUFF, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Kenneth Novak and Christopher Wittman appeal following their convictions in a joint jury trial on one count of conspiring to manufacture methamphetamine and P2P, arguing, inter alia, that the district court improperly calculated their offense levels under the Sentencing Guidelines. We reject their contentions and affirm.
 
 
 4
 * At Novak's bail review hearing, the prosecuting attorney mistakenly conceded that what the government had thought was a substantial amount of P2P at the lab site turned out to be merely evidence of past manufacture of the drug. The appellants argued at sentencing that the government should be bound by its admission at the bail review hearing concerning the absence of any P2P in significant quantities. The district court rejected their contention, holding that the admission did not rise to the level of a judicial admission. We agree.
 
 
 5
 In order to constitute a judicial admission that is binding on both the trial and appellate courts, an attorney's statement must have a fair degree of "formality"; i.e., it must be done in writing or in open court and amount to a real concession of a fact at issue, and not have been made merely as a concession for some unrelated purpose. American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226, 227 (9th Cir.1988); United States v. Bentson, 947 F.2d 1353, 1356 (9th Cir.1991), cert. denied, 504 U.S. 958 (1992); United States v. James, 987 F.2d 648, 651 (9th Cir.1993); GC Micro Corp. v. Defense Logistics Agency, 33 F.3d 1109, 1115 n. 5 (9th Cir.1994)
 
 
 6
 Here, the prosecution's mistaken concession with respect to the P2P found at the site was not made for the purpose of determining the quantity of drugs involved, but was done to show that the "change" was not material to the issue at hand, viz., Novak's mandatory minimum sentence and his status as a flight risk. The district court did not abuse its discretion.
 
 II
 
 7
 The appellants next contend that the district court erred by including the 4.674 kg of P2P found in the lab as "relevant conduct" for purposes of U.S.S.G. § 1B1.3, because those drugs were allegedly part of a manufacturing process that predated their involvement with the lab, were not part of their conspiracy, and were not foreseeable to them. We reject this argument.
 
 
 8
 "Relevant conduct" includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]" U.S.S.G. § 1B1.3(a)(1)(B). We have reviewed the evidence against the appellants and find no clear error with the district court's ruling. See United States v. MacDonald, 992 F.2d 967, 970 (9th Cir.1993); United States v. Bauer, --- F.3d ----, ----, Nos. 94-30073 etc., slip op. 6003, 6026-27 (9th Cir. May 20, 1996) (amending prior opinion published at 75 F.3d 1366).
 
 III
 
 9
 The district court determined the amount of methamphetamine involved by applying a conversion ratio to the P2P found at the lab site, and then adding to that amount the methamphetamine found there. The appellants argue that the court erred by using the conversion ratio instead of the tables set out at U.S.S.G. § 2D1.1, comment. (n. 10).
 
 
 10
 Section 2D1.1(c) of the Sentencing Guidelines sets forth a Drug Quantity Table ("DQT") for the purpose of determining a defendant's base offense level for the manufacture of given quantities of certain listed drugs, including methamphetamine. Because the DQT "provides direction only for the more common controlled substances, [e.g.,] ... methamphetamine," the Guidelines also have Drug Equivalency Tables ("DETs") for such "other substances" as P2P. See U.S.S.G. § 2D1.1, comment. (n. 10). The purpose of the DETs is to enable a sentencing court to calculate a defendant's base offense level by first converting an "other substance" drug to its "equivalent" amount of marijuana, and then looking up the base offense level for that amount of marijuana in the DQT.
 
 
 11
 Contrary to the appellants' assertion, a district court should use the DETs instead of a conversion ratio when only one controlled substance not listed in the DQT is involved in the substantive offense, or when different controlled substances are involved in the offense(s) charged. See U.S.S.G. § 2D1.1, comment. (n. 10); United States v. Salazar, 961 F.2d 62, 64 (5th Cir.1992); United States v. Paz, 927 F.2d 176, 180 (4th Cir.1991). Because methamphetamine is listed in the DQT, and P2P is intimately bound up with the manufacturing conspiracy, the district court did not err by using a conversion ration instead of the DETs.[1] Cf. United States v. Basinger, 60 F.3d at 1400, 1409-10 (9th Cir.1995); United States v. Myers, 993 F.2d 713, 715-16 (9th Cir.1993).
 
 IV
 
 12
 Wittman argues that the district court's decision to restrict the scope of his cross-examination of Robert Ehrig ran afoul of the confrontation clause and unfairly precluded him from impeaching Ehrig's credibility, by showing that the government's witness had breached his promise to follow the conditions of pretrial release by failing a drug test. Contrary to Wittman's assertion, he was given ample opportunity to, and did, bring out a considerable amount of evidence to discredit Ehrig in the eyes of the jury. The district court did not abuse its discretion by limiting cross-examination on this one issue. See United States v. Wills, --- F.3d ----, ----, No. 95-10054, slip op. 7611, 7627 (9th Cir. June 26, 1996).
 
 V
 
 13
 The district court increased Wittman's offense level by two points for obstruction of justice, based on its determination that Wittman gave false testimony at trial. Wittman contends that this was error, because the court failed to evaluate his testimony in a light most favorable to Wittman, and because the court's findings were insufficient to support the enhancement. We disagree.
 
 
 14
 A defendant's mere denial of guilt does not constitute an obstruction of justice, but the giving of false testimony under oath can. U.S.S.G. § 3C1.1, comment. (nn. 1, 3(b) & (f)); United States v. Dunnigan, 507 U.S. 87, 94-95 (1993); United States v. Arias-Villanueva, 998 F.2d 1491, 1512 (9th Cir.), cert. denied, 114 S.Ct. 573 (1993). Thus, while a defendant's testimony must be evaluated in a light most favorable to him, a district court is not required to believe him; rather, the court need only resolve those conflicts about which it has no firm conviction, and can certainly agree with the jury's verdict. United States v. Barbosa, 906 F.2d 1366, 1370 (9th Cir.), cert. denied, 498 U.S. 961 (1990).
 
 
 15
 Before the court can impose the two-level increase, however, it "must find that [the defendant] gave (1) false testimony, (2) on a material matter, (3) with willful intent." United States v. Robinson, 63 F.3d 889, 892 (9th Cir.1995) (citation omitted). "Although the court need not specifically address each of these elements, its findings must encompass all of the factual predicates for a finding of perjury." Id. (internal quotation omitted).
 
 
 16
 Although the district court's somewhat generalized findings could have been more specific, we conclude that they pass muster under United States v. Dunnigan, 507 U.S. 87, 91, 95 (1993) and by United States v. Arias-Villanueva, 998 F.2d 1491, 1512 (9th Cir.), cert. denied, 114 S.Ct. 573 (1993). Accordingly, we find no clear error in the two-level enhancement. See United States v. Ancheta, 38 F.3d 1114, 1117 (9th Cir.1994).
 
 VI
 
 17
 Wittman's final contention is that he was not nearly as culpable as either Ehrig or Novak, and therefore should have received a two-point reduction in his offense level as a minor participant under U.S.S.G. § 3B1.2(b). Contrary to Wittman's assertion, however, there was ample evidence to show that he was involved with both Novak and Ehrig at all stages of the manufacture of both P2P and methamphetamine: Ehrig testified to that effect, Wittman's fingerprints were found all over the lab and the items in it (indeed, there were nearly twice as many of his prints as Ehrig's found in the lab), and Wittman's prior conviction for manufacturing methamphetamine indicates that he had the kind of expertise that Ehrig, as something of a novice, needed. We find no clear error. See United States v. Benitez, 34 F.3d 1489, 1497 (9th Cir.1994), cert. denied, 115 S.Ct. 1268 (1995).
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable Marilyn L. Huff, United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 United States v. Campbell, 61 F.3d 976 (1st Cir.1995), cert. denied, 116 S.Ct. 1556 (1996), cited by the appellants, is not to the contrary. Unlike the facts of the instant appeals, Campbell possessed and manufactured only P2P, which he then forwarded to someone who converted the P2P to methamphetamine